ARB CONSTRUCTION, LLC *v.* PINNEY
CONSTRUCTION CORPORATION
(AC 22233)

Lavery, C. J., and Schaller and West, Js.

Argued October 23, 2002—officially released February 18, 2003

*Glenn T. Terk,* for the appellant (defendant).

*Margaret Fogerty Rattigan,* for the appellee (plaintiff).

SCHALLER, J. The defendant, Pinney Construction Corporation, appeals from the judgment rendered by the trial court in a breach of contract action awarding $149,616 to the plaintiff, ARB Construction, LLC. On appeal, the defendant claims that the court improperly (1) concluded that the contract between the parties was clear and unambiguous, (2) concluded that the defendant did not meet its burden of proof on its counterclaim that the plaintiff's work was unskillful, negligent or unworkmanlike and (3) prevented the defendant from introducing a site plan into evidence. We affirm the judgment of the trial court.

The court made the following factual findings in its memorandum of decision. "[The plaintiff] is owned and operated by Andrew Burnham. [The defendant] is owned and operated by Craig Pinney. On May 25, 1999, [the defendant] contracted with Silver Cove Associates, LLC (Silver Cove), to reconstruct and provide new construction at Silver Cove's shopping plaza located at 150-210 Silas Deane Highway, Wethersfield, Connecticut (the plaza). Thereafter, on June 10, 1999, [the defendant], as general contractor, entered into a one page written contract with [the plaintiff], as subcontractor, for [the plaintiff] to perform a host of site excavation and preparation tasks at the plaza. When Burnham and Pinney met on June 10, 1999, to draw the contract, they had available to them a set of plans for the plaza, substantially as approved by the Wethersfield planning and zoning commission, including an existing conditions plan, a site plan, a grading and utility plan, a landscape plan, an erosion and sedimentation control plan, a roadway plan and two pages of construction details. By the terms of the written contract [the plaintiff] was to be paid in the lump sum amount of $430,000, less a credit of $80,000 for an unrelated job, for a total of $350,000. [The plaintiff] was to undertake and com-

plete the following tasks in accordance with the site plan: reclaimed parking lot, bituminous curbing, cut/repour front concrete curb at plaza, sidewalks, cuts and fills, drainage, sewer, gas trenching, water, sprinkler and hydrant, electrical trenching with pipe included, remove and replace light poles, demolition/excavation rear loading docks and foundations, demolition masonry at overhead doors in rear, demolition bank building and landscaping."

The plaintiff subsequently commenced work on the project. The plaintiff entered into a contract with Empire Paving, Inc. (Empire), to perform both the reclaiming and paving of the parking lot. The plaintiff was to be responsible for payment to Empire for the reclamation costs, and the defendant was to be responsible for the paving costs. The court found that the plaintiff contracted with Empire on behalf of the defendant only as a convenience.

The court concluded that paving was not included in the contract between the parties because the contract was clear and unambiguous that only a reclaimed parking lot was required. Furthermore, the court determined that the term "reclaimed parking lot" did not encompass paving. This appeal followed.

I

The defendant's first claim on appeal is that the court improperly determined that the contract was clear and unambiguous as to the inclusion of paving. The defendant argues that the contract term "reclaimed parking lot" was an ambiguous term that required paving to be done, and, therefore, the plaintiff was responsible under the contract for the paving of the parking lot.[1] We do not agree.

---

[1] The defendant refers in its brief to several pieces of evidence that allegedly demonstrate that the intent of the parties was to include paving under the term "reclaimed parking lot." Our ultimate conclusion, however, which is that the court properly determined that the contract was clear and unambiguous, makes analysis of those arguments unnecessary. "Where the lan-

The defendant's claim raises a mixed issue of fact and law. "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." (Internal quotation marks omitted.) *Putnam Park Associates* v. *Fahnestock & Co.*, 73 Conn. App. 1, 8, 807 A.2d 991 (2002). Where a technical or special meaning is intended by the language of the contract, that meaning, and not the language's ordinary usage, shall be employed. See *New England Petroleum Corp.* v. *Groppo*, 214 Conn. 444, 450, 572 A.2d 970 (1990).

"Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. . . . Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Citation omitted; inter-

---

guage of the contract is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation marks omitted.) *Putnam Park Associates* v. *Fahnestock & Co.*, 73 Conn. App. 1, 8, 807 A.2d 991 (2002). Because we conclude that the court was not clearly erroneous in its definition of "reclaimed parking lot," the contract must be construed to exclude paving, and, therefore, arguments of a contrary intent are irrelevant.

The defendant also argues that the court improperly failed to consider exhibit B in its construction of the contract. Exhibit B consisted of a contemporaneous writing between the parties of a list of the items in the contract with a price estimate for each. The defendant argues that this exhibit would aid the court in resolving ambiguities in the contract. There is no indication in the record that the court failed to consider this exhibit when reaching its legal conclusions. In fact, exhibit B was a full exhibit to which the court had access in construing the contract.

nal quotation marks omitted.) *Putnam Park Associates* v. *Fahnestock & Co.*, supra, 73 Conn. App. 8. "When . . . the trial court draws conclusions of law . . . we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Murphy, Inc.* v. *Remodeling, Etc., Inc.*, 62 Conn. App. 517, 522, 772 A.2d 154, cert. denied, 256 Conn. 916, 773 A.2d 945 (2001). Our standard of review, therefore, is plenary. See *Aubin* v. *Miller*, 64 Conn. App. 781, 790, 781 A.2d 396 (2001).

"Contract language is unambiguous when it has a definite and precise meaning about which there is no reasonable basis for a difference of opinion." (Internal quotation marks omitted.) *Christian* v. *Gouldin*, 72 Conn. App. 14, 20, 804 A.2d 865 (2002). "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." (Internal quotation marks omitted.) *Mallozzi* v. *Nationwide Mutual Ins. Co.*, 72 Conn. App. 620, 628, 806 A.2d 97, cert. denied, 262 Conn. 915, 811 A.2d 1292 (2002). "[A] presumption that the language used is definitive arises when, as in the present case, the contract at issue is between sophisticated parties and is commercial in nature." *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, 259 Conn. 665, 670, 791 A.2d 546 (2002).

Here, the court engaged in a two step process in construing the contract. First, the court concluded that the contract was clear and unambiguous because paving was not expressly listed as a task to be performed on the contract. The plaintiff, therefore, was responsible for only a reclaimed parking lot. We agree with the court. The contract clearly lists the jobs to be performed, and paving is not listed. The contract is clear

and unambiguous that only a reclaimed parking lot was required.

Because the contract clearly and unambiguously required a reclaimed parking lot, the court then proceeded to construe the contract according to that term. See *Putnam Park Associates* v. *Fahnestock & Co.*, supra, 73 Conn. App. 8. That required the court to define reclaimed parking lot as it is used in the construction field.[2] The court made the following factual finding in its memorandum of decision: "Reclaiming a parking lot means digging up the existing asphalt surface, including asphalt curbing and islands, and digging up the subsurface base to a depth of several inches. All the material is simultaneously dug up and ground up by a milling machine and deposited evenly over the compacted subsurface area. Depending upon the desired finished grade, the operator may then skim off some surface inches of the reclaimed material for use elsewhere or he or she may not. What remains of the parking lot is graded and rolled. That completes the reclaiming of the parking lot. . . . The reclaiming of a parking lot is entirely separate from the paving of a parking lot. . . . A reclaimed parking lot may remain in a reclaimed condition without any paving."

The court's determination of the special meaning of the term "reclaimed parking lot" is based on a finding of fact. We review the court's finding of fact using the clearly erroneous standard. Id., 11. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." (Internal quotation marks omitted.) Id., 12.

---

[2] The defendant argues that the word "reclaimed" should be given its ordinary dictionary meaning. From the testimony at trial, however, it is apparent that "reclaimed" has a technical meaning in the construction field.

The court's definition of "reclaimed parking lot" is not clearly erroneous. Burnham testified that a reclaimed parking lot is "when you grind it up to a material that's less than three inches in diameter." That requires the use of a machine that "turns the pavement up" and "fluffs it." The parking lot could be left in that condition without paving. The plaintiff's expert, John R. Cullina, defined reclaiming as "a method of pulverizing or scarifying or removing the material with a machine that would place the material pulverized right behind the machine, fluffed up . . . . And what it does is, it allows you to use this material for other . . . various uses." The defendant's expert, Deborah Brown, testified that reclaiming a parking lot included grinding up the old pavement and that this could be rolled over before paving to compact it and that it would then be overlaid with asphalt. Furthermore, Gary Zimmitti, the owner of Technical Excavation, stated that reclaiming includes pulverizing the old pavement, removing unsuitable reclaimed material, grading the reclaimed material and that then pavement would be laid down. Pinney defined reclaiming as pulverizing the old pavement, fluffing that material up and then rolling over that material. Finally, Douglas Burnham, a plaintiff's witness, testified that a reclaimed parking lot is one that is pulverized and that this material can be left in that state or paved over. On the basis of that evidence, we conclude that the court's definition of "reclaimed parking lot" is not clearly erroneous.

The court made a legal determination that the contract clearly and unambiguously required only a "reclaimed parking lot" and not paving. It further made a factual conclusion as to the technical and special definition of "reclaimed parking lot" that did not include paving to give the contract effect according to that term. Accordingly, we conclude that the court did not

improperly determine that the contract was clear and unambiguous and did not include paving.[3]

## II

The defendant next claims that the court improperly concluded that the defendant did not meet its burden of proof on its counterclaim that the plaintiff's work was unskillful, negligent or unworkmanlike. We disagree.

The defendant alleged in the second count of its counterclaim that the plaintiff was responsible for paving under the contract and that the plaintiff's failure to pave the parking lot rendered its work under the contract unskillful, negligent or unworkmanlike. In support of its claim on appeal, the defendant argues that due to the court's improperly concluding that paving was not included in the contract, the court disregarded evidence of the paving and repair work that had to be completed by Zimmitti, another contractor.

A challenge to the court's factual finding is reviewed under the clearly erroneous standard. Id., 11. Because we have concluded that the court properly determined that paving was not included in the contract, the defendant's argument is without merit. The fact that the plaintiff was not responsible for paving prohibits a finding that the defendant satisfied its burden of proof on the second count of its counterclaim, which alleged that the plaintiff negligently had performed under the contract because of its failure to pave.

## III

The defendant's final claim on appeal is that the court improperly excluded from evidence a site plan, exhibit

[3] Even if we were to conclude that the contract or the term "reclaimed parking lot" was ambiguous, the court's judgment still would be affirmed. "When there is ambiguity, we must construe contractual terms against the drafter." (Internal quotation marks omitted.) *Rund* v. *Melillo*, 63 Conn. App. 216, 222, 772 A.2d 774 (2001). The evidence demonstrates that Pinney, on behalf of the defendant, drafted the contract, and, therefore, the meaning of "reclaimed parking lot" would be construed in favor of the plaintiff.

N for identification (exhibit N). The defendant argues that the court abused its discretion in excluding that exhibit because it limited the defendant's cross-examination of Andrew Burnham regarding a single difference between exhibit N and site plans already in evidence. The defendant's claim, however, is misplaced. The issue presented by the court's evidentiary ruling is whether the court properly excluded evidence pursuant to its inherent power to sanction parties for failure to comply with its orders.[4] We conclude that the court did not improperly exclude exhibit N.

The following additional facts are necessary for our resolution of the defendant's claim. The defendant

---

[4] Although we do not address the issue, we note that cross-examination is an absolute right afforded to the parties in a civil case. *Dubreuil* v. *Witt*, 65 Conn. App. 35, 40–41, 781 A.2d 503 (2001). "Our standard of review of a claim that the court improperly limited the cross-examination of a witness is one of abuse of discretion. . . . Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . .

"In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial." (Citations omitted; internal quotation marks omitted.) Id., 41–42.

Here, the defendant provided no analysis or argument in its brief or at trial detailing how the exclusion of exhibit N prevented it from adequately cross-examining Andrew Burnham, nor is that evident from our review of the record. The defendant simply asserts that it wanted to explore the difference between the two site plans, but the defendant failed to indicate at trial or on appeal what that difference was or how it was important to its cross-examination of Andrew Burnham.

"We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . We will not review claims absent law and analysis." (Internal quotation marks omitted.) *McEnerney* v. *United States Surgical Corp.*, 72 Conn. App. 611, 620 n.9, 805 A.2d 816, cert. denied, 262 Conn. 916, 811 A.2d 1292 (2002). Therefore, any possible review of the defendant's claim of infringement on the right to cross-examination would not be undertaken, given the inadequate briefing supplied by the defendant.

wanted to offer into evidence exhibit N. That exhibit consisted of site plans that the defendant allegedly had provided to the plaintiff, which, in turn, it allegedly provided to Empire to prepare an estimate for paving at the plaza.[5] Already in evidence was another set of site plans, which differed from exhibit N in only one respect. The plaintiff had requested that certain documents be produced beginning in October, 2000, including any site plans. On February 14, 2001, the plaintiff filed a supplemental memorandum of law in support of its motion for default for the defendant's failure to respond to the plaintiff's requests for production. In that memorandum of law, the plaintiff reiterated its request for any plans relating to the plaza. On April 3, 2001, the court, *Graham, J.*, granted the plaintiff's motion for default for the defendant's failure to respond to discovery requests, giving the defendant five weeks for full compliance. On May 25, 2001, the plaintiff filed a motion for noncompliance and request for entry of default. On June 1, 2001, the court, *Graham, J.*, ordered sanctions against the defendant and precluded the intro-

---

[5] In its appellate brief, the defendant asserts that exhibit N was "the set of site work plans that Andrew Burnham provide to Empire Paving so that Empire Paving could prepare an estimate for paving for [the plaza]." The evidence produced at trial, however, casts serious doubt on that assertion. The defendant asked the plaintiff to obtain an estimate for the paving at the plaza in April, 1999. The plaintiff contacted Empire to perform an estimate, and Empire provided its estimate on April 13, 1999. That estimate was relayed from the plaintiff to the defendant on April 29, 1999.

The plaintiff asserted at trial that it did not receive any plans until May, 1999, and that Empire provided its estimate simply by visiting the site. The defendant stated that it provided the plaintiff with either the April 15 or April 27, 1999 version of the plans. Empire, on the other hand, stated that the plaintiff provided it with plans to perform its estimate when it visited the site. Exhibit N consisted of revised, though not approved, plans through April 27, 1999. If those were the plans that the defendant gave to the plaintiff, then it would be impossible for Empire to have them when it provided its estimate to the plaintiff on April 13, 1999. Therefore, any argument that the plaintiff had possession or knowledge of those plans is weakened by the lack of evidence in the record that the plaintiff in fact gave those plans to Empire.

duction of evidence produced thereafter in support of the defendant's counterclaim.

After the first day of trial on June 1, 2001, the defendant contacted Empire and requested any site plans it possessed. Empire did have site plans and forwarded them to the defendant. These became exhibit N for identification. Those plans had not been disclosed to the plaintiff until they were offered on the second day of trial on June 6, 2001. The defendant offered exhibit N as a full exhibit during the cross-examination of Andrew Burnham, but the plaintiff objected, arguing that the exhibit had not been produced during discovery and was in violation of the June 1, 2001 pretrial order.

In its ruling on the evidence, the court stated: "[M]y ruling is that that document will be precluded because it has not been produced in a timely fashion with regard to discovery . . . ."[6] The defendant then offered the exhibit again through Frank Machado, a paving estimator for Empire who admitted that those were the plans the plaintiff had provided to him. The court sustained the plaintiff's objection to that offer as well.

"We have long recognized that, apart from a specific rule of practice authorizing a sanction, the trial court has the inherent power to provide for the imposition of reasonable sanctions, to compel the observance of its rules. . . . Our trial courts have the inherent authority to impose sanctions against an attorney and his client for a course of claimed dilatory, bad faith and harassing litigation conduct, even in the absence of a specific rule or order of the court that is claimed to have been violated."[7] (Citations omitted; internal quotation

[6] The defendant argues on appeal that the court improperly based its evidentiary ruling on the June 1, 2001 pretrial order. The court, however, stated in its ruling that it was "not . . . changing in any way the order entered by [the court] last Friday." In addition, after reviewing the pretrial order, the court stated that its ruling was not in conflict with that order.

[7] Exclusion of designated matters from evidence is one example of a sanction a court may impose. See Practice Book § 13-14 (b) (4).

marks omitted.) *Millbrook Owners Assn., Inc. v. Hamilton Standard*, 257 Conn. 1, 9–10, 776 A.2d 1115 (2001).

"In order for a trial court's order of sanctions for violation of a discovery order to withstand scrutiny, three requirements must be met. First, the order to be complied with must be reasonably clear. In this connection, however, we also state that even an order that does not meet this standard may form the basis of a sanction if the record establishes that, notwithstanding the lack of such clarity, the party sanctioned in fact understood the trial court's intended meaning. This requirement poses a legal question that we will review de novo. Second, the record must establish that the order was in fact violated. This requirement poses a question of fact that we will review using a clearly erroneous standard of review. Third, the sanction imposed must be proportional to the violation. This requirement poses a question of the discretion of the trial court that we will review for abuse of that discretion." Id., 17–18.

Our review of the record demonstrates that the court's imposition of a sanction excluding the introduction of exhibit N, which was not produced at any time during discovery, was proper. First, the order that the defendant had to comply with was reasonably clear. Clearly, the defendant was on notice from October, 2000, until June 1, 2001, that the plaintiff desired plans relating to the plaza. On April 3, 2001, the court ordered full compliance within five weeks. The defendant does not argue that it was unaware of the order or the requests for the plans, but rather that it did not have the plans in its possession. There is no indication that the order to comply fully with the plaintiff's discovery request was unclear in any way.

Second, the record demonstrates that the April 3, 2001 pretrial order was violated by the defendant. The

court had evidence of the pretrial order for full compliance with the plaintiff's request for plans relating to the plaza, the failure of the defendant to produce the evidence in question at that time, the failure of the defendant to make any attempt to contact Empire during discovery concerning the existence of the plans and the production of exhibit N only on the second day of trial. That evidence supports the court's conclusion that the discovery order was violated by the defendant when it failed to timely produce the requested plans, and, therefore, the court's conclusion is not clearly erroneous.

Finally, the court did not abuse its discretion in imposing the sanction of precluding the evidence from trial because the sanction was proportional to the violation. The defendant only contacted Empire after the first day of trial to inquire whether it had site plans instead of during the months of discovery prior to trial during which the defendant had the knowledge of the court's pretrial order for full compliance and the plaintiff's request for any existing site plans. The production of exhibit N on the second day of trial was unreasonably late. Accordingly, the court did not improperly impose the exclusionary sanction on the defendant for violating the full compliance pretrial order.

The judgment is affirmed.

In this opinion the other judges concurred.