## PETER BRADFORD DETELS *v.* NICOLETTA DETELS
### (AC 23299)

Lavery, C. J., and Foti and McLachlan, Js.

Submitted on briefs June 11—officially released September 16, 2003

*Richard L. Goldblatt* filed a brief for the appellant (plaintiff).

*Opinion*

LAVERY, C. J. The plaintiff, Peter Bradford Detels, appeals from the postjudgment order of the trial court granting the defendant's motion for contempt. On appeal, the plaintiff claims that the court improperly construed the parties' separation agreement to require that he file for bankruptcy protection to discharge the property distribution.[1] We reverse the judgment of the trial court.

The following facts are relevant to the plaintiff's appeal. The parties, who were married in 1987, obtained a judgment of dissolution on April 9, 1999. Incorporated into the judgment was a separation agreement (agreement). Article V of the agreement, entitled "Division of Personal Property," provided in paragraph 5.3: "As a lump sum property distribution, the [plaintiff] shall pay to the [defendant] the sum of $300,000 payable at the sum of $30,000 per year for a period of ten years commencing on or before December 31, 1999, and for each successive year thereafter. This property distribution is intended to be further support for the family and shall not be dischargeable by the [plaintiff] in bankruptcy. In the event that the [plaintiff] is physically

---

[1] The defendant failed to file an appellate brief. We therefore have considered the appeal solely on the basis of the plaintiff's brief and the record.

disabled and/or unemployable or his net worth is less than $200,000 the [plaintiff] may discharge this obligation."[2]

On December 6, 2001, the defendant filed a motion for contempt, alleging, inter alia, that the plaintiff had violated the dissolution judgment by failing to pay the annual property distribution as set forth in paragraph 5.3. At a hearing on the defendant's motion, the defendant produced evidence establishing that during 2001, the plaintiff had failed to forward any portion of the annual property distribution. The plaintiff countered by producing evidence that his net worth had fallen below $200,000, thereby discharging him of his obligation to pay the annual property distribution.

On June 14, 2002, the court issued its written memorandum of decision granting the defendant's motion for contempt. The court determined that even if the plaintiff's net worth had fallen below $200,000, the plaintiff would not be relieved from the obligation to pay. The court, relying on *Schiano* v. *Bliss Exterminating Co.*, 260 Conn. 21, 41–42, 792 A.2d 835 (2002), rejected the plaintiff's attempt to attribute two different meanings to the word "discharge" in paragraph 5.3. The court, rather, found that the term "discharge," as used in paragraph 5.3, clearly related to bankruptcy proceedings and that the plaintiff was required to make annual property distribution payments unless the obligation was discharged in bankruptcy. The court found that the plaintiff wilfully had failed to comply with the terms of the separation agreement. The court, therefore, granted the defendant's motion for contempt and ordered the plaintiff to convey $30,000 to the defendant. This appeal followed.

On appeal, the plaintiff claims that the court improperly construed the parties' separation agreement to

[2] The last sentence of paragraph 5.3 was handwritten and initialed by the parties.

require that he file for bankruptcy protection to discharge his obligation to pay the property distribution. Specifically, the plaintiff claims that the language of article V, paragraph 5.3, clearly showed that the parties intended the plaintiff to be discharged from his obligation to pay in the event that his net worth dropped below $200,000. The plaintiff claims that the court, therefore, improperly construed the agreement to require that he file for bankruptcy protection to discharge the obligation. We conclude that the word "discharge" in the parties' separation agreement is ambiguous and, accordingly, reverse the judgment of the trial court.

First we set forth our standard of review. "[A] finding of indirect civil contempt must be established by sufficient proof that is premised upon competent evidence presented to the trial court in accordance with the rules of procedure as in ordinary cases. . . . A finding of contempt is a factual finding. . . . We will reverse that finding only if we conclude the trial court abused its discretion." (Internal quotation marks omitted.) *Legnos* v. *Legnos*, 70 Conn. App. 349, 352–53, 797 A.2d 1184, cert. denied, 261 Conn. 911, 806 A.2d 48 (2002). "To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt." (Internal quotation marks omitted.) *Gina M. G.* v. *William C.*, 77 Conn. App. 582, 590, 823 A.2d 1274 (2003). Although a finding of wilfulness as a predicate to a judgment of contempt is not barred, as a matter of law, by the fact that the terms of the judgment are ambiguous, the court may consider such ambiguity in exercising its discretion regarding a finding of wilfulness. *Sablosky* v. *Sablosky*, 258 Conn. 713, 723, 784 A.2d 890 (2001). We also may consider such ambiguity in determining whether the court has abused its discretion. Id.

In the present case, the court found that "it is clear that the term discharge relates to bankruptcy proceed-

ings. The plaintiff must make annual property distribution payments unless that obligation is discharged in bankruptcy." We disagree with the court's determination that the word "discharge" in the separation agreement clearly and unambiguously related to bankruptcy proceedings. We conclude, rather, that the term "discharge" in the separation agreement is ambiguous with regard to the circumstances under which the plaintiff is entitled to discharge the obligation.[3]

"Where a judgment incorporates a separation agreement, the judgment and agreement should be construed in accordance with the laws applied to any contract." (Internal quotation marks omitted.) *Champagne* v. *Champagne*, 43 Conn. App. 844, 848, 685 A.2d 1153 (1996). "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. . . . Although ordinarily the

---

[3] We note that at the initial hearing on the defendant's motion for contempt, the court expressed its belief that the provision is ambiguous, and could not be resolved without a determination as to what was intended at the time the provision was drafted. In that regard, the court engaged in the following colloquy with counsel for the plaintiff:

"The Court: Paragraph 5.3 and the intent of the parties in paragraph 5.3 is critical. It's inherently inconsistent. It can't be discharged in bankruptcy, but it can be discharged, according to [the plaintiff's counsel], sua sponte by the obligor upon meeting any one of three different contingencies, or it said it may be discharged. I need to know what they meant at the time they entered into this—

"[The Plaintiff's Counsel]: Yes, Your Honor.

"The Court:—because it certainly affects property rights of both of these parties."

The court then ordered counsel to subpoena the attorneys who prepared the agreement so that they could testify regarding "what was meant at the time of this decree *because it's ambiguous as far as the court's concerned.*" (Emphasis added.)

Attorney Bonnie Amendola, the partner of the defendant's former attorney, testified at the subsequent hearing on the defendant's motion for contempt. Amendola testified that she was present on the date of the actual dissolution and that it was her handwriting on the provision at issue in the separation agreement. The evidence presented at the hearing did not otherwise relate to the specific issue of what the parties intended by that provision.

question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) *ARB Construction, LLC* v. *Pinney Construction Corp.*, 75 Conn. App. 151, 154, 815 A.2d 705 (2003). The court's determination as to whether a contract is ambiguous is a question of law; our standard of review, therefore, is de novo. See *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, 259 Conn. 665, 669–70, 791 A.2d 546 (2002); see also *ARB Construction, LLC* v. *Pinney Construction Corp.*, supra, 155.

"A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Citations omitted; internal quotation marks omitted.) *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, supra, 259 Conn. 670.

"In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so." (Citations omitted; internal quotation marks omitted.) Id., 670–71.

The first part of paragraph 5.3 at issue in this appeal specifically stated that "[t]his property distribution is intended to be further support for the family and *shall not* be dischargeable by the [plaintiff] in bankruptcy.

. . ." The term "dischargeable" as used in that sentence clearly relates to the law of bankruptcy and employs a special meaning.[4] According to the language of this sentence, the defendant is not discharged from the obligation to pay, even in the event of bankruptcy, because the property distribution is intended to be further support for the family.[5]

The very next sentence, however, states that "[i]n the event that the [plaintiff] is physically disabled and/ or unemployable or his net worth is less than $200,000 the [plaintiff] may discharge this obligation." The use of the term "discharge" in that second sentence appears to alter the previous sentence by employing a common, ordinary meaning to the term "discharge."[6] It appears that by that sentence, the parties may have created a condition subsequent that would operate to discharge the plaintiff from his obligation to pay the annual property distribution in the event that his net worth fell below $200,000, regardless of whether he filed for bankruptcy protection.[7] See J. Calamari & J. Perillo, Con-

---

[4] "[T]he language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where a technical or special meaning is intended by the language of the contract, that meaning, and not the language's ordinary usage, shall be employed." (Citation omitted; internal quotation marks omitted.) *ARB Construction, LLC* v. *Pinney Construction Corp.*, supra, 75 Conn. App. 154.

[5] Section 523 (a) of title 11 of the United States Code provides in relevant part: "A discharge under section 727, 1141, 1228 (a), 1228 (b), or 1328 (b) of this title does not discharge an individual debtor from any debt . . . (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record . . . ."

[6] "Discharge" is defined by the Merriam-Webster Dictionary as "to relieve of a charge, load, or burden," "to release from an obligation" and "to set aside."

[7] The interpretation is supported by the following colloquy between the plaintiff and his counsel on April 9, 1999, regarding the property distribution as set forth in paragraph 5.3:

"[The Plaintiff's Counsel]: Now, there's going to be a lump sum property distribution, and you're going to give your wife the sum of $300,000, payable at the rate of $30,000 per year for a period of ten years, commencing on or

tracts (4th Ed. 1998) § 11.7, p. 399. ("condition subsequent is any event the existence of which, by agreement of the parties, discharges a duty of performance that has arisen").

Because "the intent of the parties is not clear and certain from the language of the contract itself"; *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, supra, 259 Conn. 670–71; we conclude that the use of the term "discharge" in the last sentence of paragraph 5.3 is ambiguous.[8] We further conclude that because of that ambiguity and because there was evidence that the plaintiff's net worth was less than $200,000, the court abused its discretion in finding the plaintiff's noncompliance to be wilful and granting the defendant's motion for contempt.

The judgment is reversed and the case is remanded with direction to conduct an evidentiary hearing to determine the parties' intention relative to the term "discharge" in the last sentence of paragraph 5.3, including what act or acts would entitle the plaintiff to "discharge" and what obligation is to be discharged.

In this opinion the other judges concurred.

before December 31, 1999, and for each successive year thereafter. This property distribution is intended to be further support for the family and shall not be dischargeable by you in bankruptcy. Do you understand that?

"[The Plaintiff]: Yes.

"[The Plaintiff's Counsel]: Now, this is a lump sum property distribution, so it is not tax deductible to you, nor is it taxable to your wife. Do you understand that?

"[The Plaintiff]: Yes.

"[The Plaintiff's Counsel]: Okay. Now, in the event that you are physically disabled and unemployable, or if your net worth is less than $200,000, you may discharge this obligation to your wife. Do you understand that?

"[The Plaintiff]: Yes, I understand.

"[The Plaintiff's Counsel]: Okay."

[8] We also note that there was no evidence before the court regarding the parties' intent as to whether, in the event that the plaintiff's net worth fell below $200,000, he would be discharged permanently from the obligation or merely for the period of time that his net worth was determined to be less than $200,000.