ROBERT J. BARNABEI CONTRACTING, LLC *v.*
GREATER HARTFORD JEWISH COMMUNITY
CENTER, INC., ET AL.
(AC 31679)

Gruendel, Harper and Flynn, Js.

Argued September 13, 2010—officially released March 29, 2011

*Terence D. Mariani*, with whom, on the brief, was *Robert P. Hanahan*, for the appellant (plaintiff).

*Paul S. Tagatac*, for the appellee (defendant Aspinet Construction Company).

*Opinion*

GRUENDEL, J. The plaintiff, Robert J. Barnabei Contracting, LLC, appeals from the judgment of the trial court rendered in accordance with a report filed by an attorney fact finder (fact finder). The court rendered judgment awarding the plaintiff $292 in compensatory damages pursuant to a subcontract agreement (agreement) with the defendant Aspinet Construction Company.[1] On appeal, the plaintiff claims that the court improperly overruled its objection to acceptance of the fact finder's report because the report lacks factual justification and is otherwise incomplete. The plaintiff further claims, for the first time on appeal, that the defendant failed to comply with § 7 (f) of the agreement. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of this appeal. In early 2004, the Greater Hartford Jewish Community Center, Inc. (community center), retained the defendant as the general contractor for a renovation project (project) at the community center's West Hartford location. On March 19, 2004, the plaintiff and the defendant executed the agreement, whereby the plaintiff was to perform subsurface construction services for the project for a total price of $37,960. The dispositive provisions of the agreement are as follows:

[1] The plaintiff withdrew its cause of action as to the defendant Sovereign Bank and the defendant Greater Hartford Jewish Community Center, Inc., on May 19, 2006. Because Aspinet Construction Company is the sole defendant in this appeal, we refer to it as the defendant.

"Section 4. . . . If at any time there shall be evidence of any lien or claim for which, if established, [the defendant] or the [community center] might be or become liable and which is chargeable to [the plaintiff], [the defendant] shall have the right to retain out of any payment due or to become due by [the defendant] to [the plaintiff] an amount sufficient to indemnify [the defendant] and [the community center] against such lien or claim . . . .

\* \* \*

"Section 7. The following conditions are hereby made a part of this [a]greement . . .

"(d) The [plaintiff] agrees . . . to comply with all [f]ederal, [s]tate, [m]unicipal and local laws, ordinances, codes and regulations governing and to pay all costs and expenses required thereby . . . .

\* \* \*

"Section 8. (a) [The plaintiff] shall submit in writing to [the defendant] all claims for adjustment in the [agreement] price . . . for like claims by [the defendant] against [the community center—namely, through a written change order]. . . . [The defendant's] liability to [the plaintiff] for such claims is limited to any adjustment which shall be made by [the community center] to [the defendant's] contract on account of [the plaintiff's] claim."

On the same day that the parties executed the agreement, the defendant approached a third party, George Torello Engineers, P.C. (Torello), to perform engineering services in connection with the project, as such services were beyond the plaintiff's expertise. The defendant retained Torello to ensure that the plaintiff's work complied with applicable specifications of the West Hartford building code (building code), including, specifically, § 1816.13. After the plaintiff commenced

work on the project, the defendant submitted a written change order on May 17, 2004, by which the agreement price was increased from $37,960 to $41,275. On June 11, 2004, the plaintiff submitted an invoice to the defendant in the amount of $51,200, although it is undisputed that the plaintiff failed to submit a written change order pursuant to § 8 (a) of the agreement. Despite the plaintiff's noncompliance with § 8 (a), the defendant submitted the plaintiff's invoice to the community center for approval, which the community center eventually declined to pay due to the lack of supporting documentation. On August 3, 2004, the defendant submitted a second written change order backcharging the agreement price by $16,435.50, the cost of Torello's services on the project, pursuant to § 7 (d), thereby reducing the plaintiff's total compensation to $24,839.50. The defendant then refused to pay the plaintiff $9925, the difference between the agreement price of $41,275 and the plaintiff's invoice of $51,200, claiming that it was not liable for this amount pursuant to § 8 (a) of the agreement. Additionally, the defendant maintained that the plaintiff was responsible for the expenses associated with Torello's work pursuant to § 7 (d) of the agreement, as those services were required by the building code.

On July 11, 2005, the plaintiff commenced this action claiming, inter alia, breach of contract by the defendant. In support of its claim, the plaintiff alleged that the defendant was responsible for the full invoice amount of $51,200 and further that the defendant incorrectly backcharged the agreement price by the cost of Torello's services. In response, the defendant countered that the plaintiff was not entitled to the invoice amount of $51,200 because the community center never approved this adjustment to the agreement price. The defendant also argued that because the plaintiff already had been paid $24,547.50, and because the agreement

price of $41,275 was properly reduced by $16,435.50, the cost of Torello's services, the plaintiff was entitled only to $292. The matter was tried before the fact finder on June 18, 2007, and a report was submitted by the fact finder on November 13, 2007. In his report, the fact finder specifically found that the defendant was not contractually liable for the invoice amount of $51,200, as the community center had not approved this upward adjustment in the agreement price as required by § 8 (a). As to the plaintiff's claim regarding the back-charge for Torello's services, the fact finder found that "[§] 7 (d) of the [agreement] makes [the] plaintiff liable for the costs of code compliance . . . ." Thus, the fact finder recommended that the plaintiff be awarded $292, or the amount of the agreement price ($41,275), less the cost of Torello's services ($16,435.50) and the amount that the plaintiff had already been paid by the defendant ($24,547.50). Subsequently, the plaintiff filed an objection to acceptance of the fact finder's report and recommendations, arguing that the report was "incomplete and omits facts essential to a just disposition of this matter." On October 19, 2009, the court overruled the plaintiff's objection and rendered judgment in accordance with the fact finder's report. This appeal followed.

The plaintiff claims that the court improperly overruled its objection to acceptance of the fact finder's report and recommendations. Specifically, the plaintiff argues that the fact finder incorrectly concluded that the $51,200 invoice amount in effect constituted a claim for $9925 in extra compensation, rather than a legitimate adjustment to the agreement price of $41,275.[2] Additionally, the plaintiff claims that the fact finder

[2] The $9925 figure represents the difference between the plaintiff's invoice amount of $51,200 and the agreement price of $41,275, as documented by the defendant's change order, dated May 17, 2004.

incorrectly found that the cost of Torello's services was appropriately backcharged under the agreement.

Before addressing the merits of the plaintiff's claims, we begin with the applicable legal principles and standard of review governing our analysis. "A reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial fact finders. . . . This court has articulated that attorney trial fact finders and [fact finders] share the same function . . . whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court. . . .

"The factual findings of a[n] [attorney trial fact finder] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *LPP Mortgage, Ltd.* v. *Lynch*, 122 Conn. App. 686, 692, 1 A.3d 157 (2010).

I

The record in the present case unequivocally demonstrates that the fact finder had sufficient evidence to conclude that the plaintiff was entitled to only $292 in compensatory damages pursuant to the parties' agreement. With respect to the plaintiff's claim regarding the $51,200 invoice amount, the plaintiff argues mainly that the fact finder incorrectly found that the agreement price was $41,275. Evidence submitted by the plaintiff itself, however, shows that the defendant

submitted a change order for $41,275 on May 17, 2004, pursuant to § 8 (a) of the agreement. Furthermore, the plaintiff does not dispute the fact that it failed to comply with the change order procedures specified in the agreement for seeking adjustments to the agreement price. Indeed, despite the plaintiff's noncompliance, the defendant sought, in good faith, to have the plaintiff's invoice approved by the community center. Ultimately, it was the plaintiff's failure to provide documentation in support of its invoice that led the community center to deny payment of the invoice amount. Because the community center never approved the payment of the plaintiff's invoice, pursuant to § 8 (a) of the agreement, the defendant was not liable to the plaintiff for this additional amount. As a corollary, we cannot say that the fact finder's finding that the agreement price was $41,275 was clearly erroneous.

II

Turning to the plaintiff's claim with respect to the $16,435.50 backcharge, the record is equally supportive of the fact finder's conclusion that this amount was appropriately deducted from the $41,275 agreement price. In support of its claim, the plaintiff argues that the defendant is "attempting to shift the burden of engineering costs" to the plaintiff. Section 7 (d) of the agreement explicitly provides, however, that "[the plaintiff agrees] . . . to comply with all [f]ederal, [s]tate, [m]unicipal and local laws, ordinances, codes and regulations governing [the performance of its work on the project] and to pay all costs and expenses required thereby . . . ." Testimony during trial before the fact finder confirmed that Torello was hired by the defendant to ensure the plaintiff's compliance with applicable specifications of the building code. Indeed, if Torello had not been employed by the defendant, the plaintiff would not have been in compliance with the building code and, as such, would not have been legally

able to commence and to continue work on the project. Moreover, there is no dispute that the defendant paid Torello $16,435.50 for services rendered in connection with the plaintiff's work. Because the defendant's payment to Torello constituted an expense for which the plaintiff was liable pursuant to § 7 (d) of the agreement, we fail to see how the fact finder's conclusion to reduce the plaintiff's compensation by the cost of such services was clearly erroneous. This determination is further supported by § 4 of the agreement that allows the defendant "to retain out of any payment due" to the plaintiff "an amount sufficient to indemnify" the defendant against an expense chargeable to the plaintiff. Here, the fact finder had ample evidence before him from which to find that the $16,435.50 was an expense chargeable to the plaintiff, and, therefore, the conclusion that the agreement price of $41,275 should be reduced by this amount was not clearly erroneous.

In sum, the plaintiff "essentially requests that we transgress our function as an appellate court and weigh conflicting evidence. . . . This, we cannot do." (Citation omitted.) *LPP Mortgage, Ltd.* v. *Lynch*, supra, 122 Conn. App. 700–701. We conclude that the fact finder's finding that the agreement price is $41,275 is adequately supported by the evidence in this case. We also conclude that the fact finder's finding that this price was subject to a backcharge in the amount of $16,435.50 was not clearly erroneous. Thus, the plaintiff's net compensation under the agreement is $24,839.50 Because there is no dispute that the plaintiff has been paid $24,547.50, the fact finder appropriately recommended that the plaintiff be awarded $292 pursuant to the parties' agreement. Accordingly, the court properly overruled the plaintiff's objection and rendered judgment in accordance with the fact finder's report.

### III

As a final matter, we address an unpreserved claim that we ordinarily would dismiss in a footnote. The

plaintiff contends, for the first time on appeal, that the defendant failed to comply with § 7 (f) of the agreement. For multiple reasons, we reject that claim.

First and foremost, the claim is not properly before us, as there is no indication in the record that the plaintiff properly preserved it for appeal. In neither its October 29, 2007 trial brief nor its November 26, 2007 objection to acceptance of the fact finder's report and accompanying memorandum of law did the plaintiff mention, let alone distinctly state, the question of the defendant's alleged failure to comply with § 7 (f) of the agreement, as our law requires. See Practice Book § 5-2; see also Practice Book § 60-5; *Remillard* v. *Remillard*, 297 Conn. 345, 351, 999 A.2d 713 (2010) (raised distinctly means party must bring to attention of court precise matter on which decision is being asked); *Crest Pontiac Cadillac, Inc.* v. *Hadley*, 239 Conn. 437, 444 n.10, 685 A.2d 670 (1996) (claims "neither addressed nor decided" by trial court are not properly before appellate tribunal). By contrast, the plaintiff expressly challenged the fact finder's determinations regarding §§ 7 (d) and 8 (a) of the agreement in its November 26, 2007 memorandum of law objecting to acceptance of the fact finder's report. Because the plaintiff never presented to the trial court the claim concerning § 7 (f) that it now pursues on appeal, we decline to afford it review. To now review that unpreserved claim would amount to an ambuscade of the trial judge. See *Intercity Development, LLC* v. *Andrade*, 286 Conn. 177, 187–88, 942 A.2d 1028 (2008) (reviewing claim articulated for first time on appeal and not before trial court results in trial by ambuscade of trial judge); *Hunnicutt* v. *Commissioner of Correction*, 83 Conn. App. 199, 203, 848 A.2d 1229 (same), cert. denied, 270 Conn. 914, 853 A.2d 527 (2004).

Apart from that infirmity, the plaintiff's claim concerning § 7 (f) is inadequately briefed, as its analysis consists of a single sentence in its principal brief. After

quoting the language of § 7 (f), the plaintiff baldly asserts that the defendant "makes no claim that written notice was given and [the plaintiff] never received any such notice to which [it] had a legal right under [the] subcontract." The plaintiff does not indicate how that claim was preserved or how the trial court ruled thereon. It further does not set forth an applicable standard of review or any substantive analysis or discussion of applicable precedent. Our appellate courts repeatedly have stated that "[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned."[3] (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control,* 266 Conn. 108, 120, 830 A.2d 1121 (2003). As such, that claim is outside the scope of our review.

---

[3] We note that the plaintiff's appellate brief also fails to comply with the requirements of Practice Book § 67-4. The statement of issues on page one does not include "[a] concise statement setting forth, in separately numbered paragraphs, without detail or discussion, the principal issue or issues involved in the appeal, *with appropriate references to the page or pages of the brief where the issue is discussed* . . . ." (Emphasis added.) Practice Book § 67-4 (a). Even more troubling is the fact that although its statement of issues includes multiple claims, the brief does not include an "argument, divided under appropriate headings into as many parts as there are points to be presented, with appropriate references to the statement of facts or to the page or pages of the transcript or to the relevant document"; Practice Book § 67-4 (d); nor does it include "on *each point* . . . a separate, brief statement of the standard of review the appellant believes should be applied." Practice Book § 67-4 (d). (Emphasis added.) As in the defendants' appellate brief in *Paoletta* v. *Anchor Reef Club at Branford, LLC,* 123 Conn. App. 402, 407, 1 A.3d 1238, cert. denied, 298 Conn. 931, 5 A.3d 491 (2010), it is difficult "to discern any coherent analysis" from much of the plaintiff's brief in the present case.

The concurring and dissenting opinion does not acknowledge that the plaintiff failed to preserve or to brief its claim adequately regarding § 7 (f) in affording review of the plaintiff's claim. In so doing, that opinion conflates the scope of our review with a standard of review, two distinct aspects of appellate practice. "Scope of review and standard of review are often—albeit erroneously—used interchangeably. The two terms carry distinct meanings and should not be substituted for one another. Scope of review refers to the confines within which an appellate court must conduct its examination. . . . In other words, it refers to the matters (or what) the appellate court is permitted to examine. In contrast, standard of review refers to the manner in which (or how) the examination is conducted." (Internal quotation marks omitted.) *Brunswick* v. *Statewide Grievance Committee*, 103 Conn. App. 601, 606 n.7, 931 A.2d 319, cert. denied, 284 Conn. 929, 934 A.2d 244 (2007). That our review of definitive contractual language is plenary pertains to the applicable standard of review. It has no bearing on the issues of whether a claim properly is preserved for such review, as our rules of practice and decisional law require; see Practice Book §§ 5-2 and 60-5; see also *Crest Pontiac Cadillac, Inc.* v. *Hadley*, supra, 239 Conn. supra, 444 n.10; or whether the claim is adequately briefed. See *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, supra, 266 Conn. 120. Those threshold issues serve to define the contours of our scope of review in a given appeal. In the present case, they indicate that the plaintiff's claim concerning § 7 (f) is not one which we are " 'permitted to examine.' " *Brunswick* v. *Statewide Grievance Committee*, supra, 607 n.7.

The concurring and dissenting opinion also opines that review of the plaintiff's unpreserved claim is warranted under Practice Book § 60-5, which recognizes

the plain error doctrine.[4] We strongly disagree. Our Supreme Court instructs that "it is well established that [an appellate] court will not apply the plain error doctrine when it has not been requested affirmatively by a party . . . ." *Connecticut Light & Power Co.* v. *Gilmore*, 289 Conn. 88, 125 n.26, 956 A.2d 1145 (2008); see also *Johnson* v. *Commissioner of Correction*, 288 Conn. 53, 60, 951 A.2d 520 (2008) (noting that " '[a] party is obligated . . . affirmatively to request review' " under plain error doctrine and declining to consider unpreserved claim thereunder because petitioner failed to request that court undertake such review); *State* v. *Britton*, 283 Conn. 598, 617, 929 A.2d 312 (2007) (declining invitation to apply plain error doctrine because party failed to explain why claim merited such an extraordinary remedy); *State* v. *Ramos*, 261 Conn. 156, 171–72, 801 A.2d 788 (2002) (declining to review unpreserved claim under plain error doctrine because party failed affirmatively to request such review); cf. *State* v. *Elson*, 125 Conn. App. 328, 340–59, 9 A.3d 731 (2010) (en banc) (reviewing in thorough fashion requirement of affirmative request in context of review pursuant to *State* v.

---

[4] We are perplexed by the concurring and dissenting opinion's invocation of the " 'exceptional circumstances' " exception. That exception, as noted by the secondary authority relied on by that opinion, was set forth in *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973), the precursor to *Golding* review. See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). In *Evans*, our Supreme Court held that there "exist only two situations that may constitute 'exceptional circumstances' such that newly raised claims can and will be considered by this court." *State* v. *Evans*, supra, 70. The first circumstance arises "where a new constitutional right not readily foreseeable has arisen between the time of trial and appeal." Id. The second circumstance arises "where the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." Id. Neither circumstance is implicated in the present case. To the extent that the concurring and dissenting opinion posits that there exists an exceptional circumstances exception to the preservation requirement beyond that set forth in the plain error doctrine and *State* v. *Golding*, supra, 239–40, by which a reviewing court may " 'consider almost any new issue on appeal,' " that novel proposition is without support in Connecticut law and is contrary to the plain language of *State* v. *Evans*, supra, 70.

*Golding,* supra, 213 Conn. 239–40, and holding that such request is necessary to obtain appellate review), cert. granted on other grounds, 300 Conn. 904, 12 A.3d 572 (2011); *State* v. *Wheatland,* 93 Conn. App. 232, 243–44, 888 A.2d 1098 ("Connecticut law is clear that a party seeking review of unpreserved claims under either the plain error doctrine; Practice Book § 60-5; or *State* v. *Golding,* [supra, 239–40], must affirmatively request such review"), cert. denied, 277 Conn. 919, 895 A.2d 793 (2006). The plaintiff in the present case has not affirmatively requested review of his claim pursuant to the plain error doctrine. Accordingly, review of the plaintiff's unpreserved claim under the plain error doctrine is inappropriate.

It is elemental that this court, as an intermediate appellate body, is bound by the precedent set forth by our Supreme Court. See, e.g., *Stuart* v. *Stuart,* 297 Conn. 26, 45–46, 996 A.2d 259 (2010) ("it is manifest to our hierarchical judicial system that this court has the final say on matters of Connecticut law and that the Appellate Court . . . [is] bound by our precedent"); *DePietro* v. *Dept. of Public Safety,* 126 Conn. App. 414, 422 n.3, 11 A.3d 1149 (2011) ("as an intermediate appellate body, we are not at liberty to discard, modify, reconsider, reevaluate or overrule the precedent of our Supreme Court"); *State* v. *Brown,* 73 Conn. App. 751, 756, 809 A.2d 546 (2002) ("[o]ur Supreme Court is the ultimate arbiter of the law in this state"). The concurring and dissenting opinion offers no explanation for its departure from that bedrock principle.

Numerous doctrines of reviewability are contained in our case law and our rules of appellate procedure. Uniform application thereof ensures that similarly situated litigants are treated in a consistent and, hence, just manner. See, e.g., *Silkwood* v. *Kerr-McGee Corp.,* 667 F.2d 908, 916 (10th Cir. 1981) ("the objective of

doing equal justice cannot be attained absent a consistent application of the rules"); *Park City Hospital* v. *Commission on Hospitals & Health Care,* 14 Conn. App. 413, 423, 542 A.2d 326 (1988) (*Bieluch, J.,* dissenting) ("due process in the administration of justice requires the uniform application of the rules of practice"), aff'd, 210 Conn. 697, 556 A.2d 602 (1989); cf. *Sutton Place Development Co.* v. *Abacus Mortgage Investment Co.,* 826 F.2d 637, 640 (7th Cir. 1987) (noting that "the federal rules [of civil procedure] are carefully-crafted instruments designed to achieve, by their uniform application, fairness . . . in the conduct of federal litigation"); *State* v. *Golding,* supra, 213 Conn. 239 (articulating "guidelines designed to facilitate a . . . more uniform application of the [standard enunciated in *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973)]"). We are aware of no authority for the proposition espoused by the concurring and dissenting opinion that an appellate court may review an unpreserved claim whenever it perceives an "unjust" result. Certainly, neither a rule of practice nor a commentary by a treatise thereon can overrule the precedent of our Supreme Court requiring an affirmative request as a prerequisite for review under the plain error doctrine.[5]

"Plain error is a doctrine that should be invoked sparingly." (Internal quotation marks omitted.) *State* v. *Bowman,* 289 Conn. 809, 817, 960 A.2d 1027 (2008). It is "reserved for *truly extraordinary situations* [in

---

[5] While the secondary source cited by the concurring and dissenting opinion states that the plain error doctrine allows an appellate court "to consider almost any new issue on appeal"; C. Tait & E. Prescott, Connecticut Appellate Practice and Procedure (3d Ed. 2000) § 8.5, p. 299; that statement must be read in the context of the precedent of our Supreme Court governing the application of that doctrine. We thus read that statement as pertaining to unpreserved claims for which the appellant affirmatively has requested review. Indeed, neither the authors of that secondary authority nor the concurring and dissenting opinion cite to any Supreme Court authority indicating otherwise.

which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under [the] plain error [doctrine] unless [he] has demonstrated that the failure to grant relief will result in manifest injustice." (Emphasis added; internal quotation marks omitted.) *State* v. *Britton,* supra, 283 Conn. 617. Supervisory authority does not confer on reviewing courts "a form of free-floating justice"; (internal quotation marks omitted) *Richardson* v. *Commissioner of Correction,* 298 Conn. 690, 701 n.11, 6 A.3d 52 (2010); nor does the plain error doctrine. Respectfully, we conclude that in suggesting that an appellate court may invoke, sua sponte, the plain error doctrine to review any unpreserved claim when injustice is perceived, the concurring and dissenting opinion misconstrues the proper scope of our appellate authority. Just months ago and in no uncertain terms, our Supreme Court expressly rejected the contention that "the Appellate Court has the discretion to decide a case on any basis, regardless of whether that claim was raised by the parties." *Sequenzia* v. *Guerrieri Masonry, Inc.,* 298 Conn. 816, 822, 9 A.3d 322 (2010). The concurring and dissenting opinion disregards that admonition in invoking the plain error doctrine in the present case. In view of the novel and potentially far-reaching theory of reviewability suggested by the concurring and dissenting opinion, we take this opportunity to reaffirm our adherence to the precedent of our state's highest court.

In addition, even if the plaintiff had requested review of its claim pursuant to the plain error doctrine, such review is unwarranted. The claim does not concern a truly extraordinary situation. Neither the plaintiff nor the concurring and dissenting opinion have established that the "existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation

marks omitted.) *State* v. *Britton,* supra, 283 Conn. 617. Counseled by principles of judicial restraint and mindful that plain error is a doctrine that should be invoked sparingly; *State* v. *Bowman,* supra, 289 Conn. 817; we decline to afford review of the plaintiff's claim regarding the defendant's compliance with § 7 (f) of the agreement in this dispute between contractors.

The judgment is affirmed.

In this opinion HARPER, J., concurred.

FLYNN, J., concurring in part and dissenting in part. Two cardinal principles of law inform our review of contracts. One is that courts will not rewrite a contractual provision unwisely made by a party. *Crews* v. *Crews,* 295 Conn. 153, 173, 989 A.2d 1060 (2010). The other is that effect must be given, to the extent possible, to all provisions of an agreement. *Honulik* v. *Greenwich,* 293 Conn. 698, 711, 980 A.2d 880 (2009); *Detels* v. *Detels,* 79 Conn. App. 467, 472, 830 A.2d 381 (2003). I agree with the majority's opinion affirming the denial of the plaintiff's claim for $9600 in extras for the more expensive kind of piling required to be installed. I do so because the plaintiff did not comply with the contractual condition precedent to receiving such an extra payment because it failed to make a written claim for contract adjustment. Such a result, though harsh, is consistent with both cardinal principles and with § 7 (b) of the contract.

I respectfully disagree with the majority's refusal to review the plaintiff's claim on appeal that the defendant improperly failed to comply with a contractual condition precedent when it withheld a $16,435.50 backcharge from the plaintiff's compensation. The trial court's decision to enter judgment on that issue for the defendant is contrary to both cardinal principles of contract interpretation and to the plain language of § 7

(f) of the agreement of the parties which provided that as a condition precedent to the defendant's undertaking any work that it claimed was the plaintiff subcontractor's responsibility forty-eight hour prior notice had to be given to the plaintiff subcontractor. The effect of the majority opinion is to apply a condition precedent to prevent the plaintiff's recovery for extras but to ignore another unfulfilled condition precedent to permit the defendant's backcharge. This result is unjust. Although the president of the defendant acknowledged that the plaintiff had performed satisfactorily, yet 40 percent of the contract price has been withheld from the plaintiff in a $16,435.50 backcharge. This has been withheld on the theory that the defendant was entitled to deduct this amount because it contracted with Torello for work that was the plaintiff's responsibility under its subcontract with the defendant. Yet, the record is devoid of any evidence that the defendant complied with the contractual provision requiring forty-eight hours prior notice to the plaintiff before doing so. "A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance. . . . If the condition is not fulfilled, the right to enforce the contract does not come into existence." (Internal quotation marks omitted.) *Gianetti* v. *Health Net of Connecticut, Inc.*, 116 Conn. App. 459, 467–68, 976 A.2d 23 (2009). Practice Book § 60-5, in the words of Professor Tait and Judge Prescott in their treatise Connecticut Appellate Practice and Procedure, allows "a Connecticut appellate court to consider almost any new issue on appeal." C. Tait & E. Prescott, Connecticut Appellate Practice and Procedure (3d Ed. 2000) § 8.5, p. 299. This " 'exceptional circumstances' " exception "was developed independently of the post-1979 exception for 'plain error' contained in the second sentence" of the second paragraph of Practice Book § 60-5. "The independence of these two exceptions is also manifested by their language and theoretical bases, that is,

'exceptional circumstances' may not present 'plain error,' and 'plain error' need not coexist with 'exceptional circumstances.' " Id. While not bound to consider claims of error not distinctly raised, our Supreme Court under the first sentence of the second paragraph of Practice Book § 60-5 providing that "[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial" has considered such questions when in its opinion "in the interests of . . . justice between individuals, it ought to be done." *Leary* v. *Citizens & Manufacturers National Bank*, 128 Conn. 475, 478–79, 23 A.2d 863 (1942); *Persico* v. *Maher*, 191 Conn. 384, 403, 465 A.2d 308 (1983). This is such a case of " 'exceptional circumstances.' " The question is not whether the plaintiff has a right to review of this issue but whether it is right that we review this issue in the interests of justice.

The plaintiff has briefed its claim that the actions of the defendant in withholding the $16,435.50 were "unilateral." As pointed out in the plaintiff's brief, our review of contractual disputes arising out of definitive contract language is plenary. *Embalmers' Supply Co.* v. *Giannitti*, 103 Conn. App. 20, 43, 929 A.2d 729, cert. denied, 284 Conn. 931, 934 A.2d 246 (2007). Plenary review does not permit us to ignore any pertinent definitive provision of a contract. The plaintiff briefed on appeal that the fact finder had ignored § 7 (f) of the contract requiring forty-eight hours prior notice to the plaintiff before contracting to undertake a task to which the defendant claimed that the plaintiff was obligated to perform.[1] The fact finder's only finding regarding

---

[1] There could be no surprise to the trial court or the defendant by virtue of the plaintiff's failure to brief this provision at trial that § 7 (f) requiring forty-eight hours notice was pertinent. The trial court was to consider all definitive provisions of the contract as a whole, whether the plaintiff did or did not brief them at trial. *Lar-Rob Bus Corp.* v. *Fairfield*, 170 Conn. 397, 407, 365 A.2d 1086 (1976) ("[a] contract is to be construed as a whole and all relevant provisions will be considered together"); *Zahringer* v. *Zahringer*, 124 Conn. App. 672, 684, 6 A.3d 141 (2010) ("[i]t is axiomatic that '[w]hen interpreting a contract, [the reviewing court] must look at the contract as a whole, consider all relevant portions together and, if possible,

notice to the plaintiff was that change order two, the vehicle the court used to impose the $16,435.50 backcharge on the plaintiff, was submitted to the plaintiff on August 3, 2004, approximately five months after the defendant engaged Torello for services that it now claims were the obligation of the plaintiff. Accordingly, I would reverse and remand the case for further proceedings as to that portion of the judgment relating to the backcharge with direction to render judgment in the plaintiff's favor for an additional $16,435.50.

give operative effect to every provision in order to reach a reasonable overall result' "). Furthermore, the defendant had pleaded a special defense and tried the case on the theory that both the plaintiff and the defendant were parties to the Torello contract. Had the defendant succeeded in proving this, the plaintiff would have needed no forty-eight hour notice that the defendant sought to charge him with responsibility for a contract to which he was a party. The fact finder found that only the defendant was a party to the Torello contract for which it sought to hold the plaintiff liable as a party, and, thus, the defendant failed to prove its special defense.