## MIDSTATES RESOURCES CORPORATION *v.*
## GARY N. DOBRINDT
## (AC 21546)

Mihalakos, Dranginis and Dupont, Js.

Argued April 2—officially released June 11, 2002

*Neal L. Moskow*, with whom, on the brief, were *Frederic S. Ury* and *Deborah M. Garskof*, for the appellant (substitute plaintiff).

*Francis R. Sablone, Jr.*, for the appellee (defendant).

*Opinion*

MIHALAKOS, J. This is an action by the plaintiff, Midstates Resources Corporation (Midstates),[1] to collect moneys due pursuant to a promissory note. After a full hearing in damages, the trial court awarded only nominal damages to the substitute plaintiff, National Loan Investors, L.P. (National Loan). National Loan now appeals from that judgment. On appeal, it essentially claims that the court improperly ruled that it failed to prove, by a preponderance of the evidence, the amount of the debt due under the note. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. On May 25, 1989, a promissory note in the principal amount of $70,000, payable to Saybrook Bank and Trust Company, was executed, which bore the signature of the defendant, Gary N. Dobrindt, as maker. After Saybrook Bank and Trust Company failed, the Federal Deposit Insurance Corporation (FDIC) was appointed as receiver. Midstates subsequently purchased the note from the FDIC for value. On January 27, 1998, Midstates accelerated the note and declared the entire amount immediately due.

On September 24, 1998, Midstates commenced this action to collect the moneys due under the note. On June 27, 2000, the court granted Midstates' motion for summary judgment as to liability only. After Midstates obtained judgment in its favor, it assigned the note to National Loan. Thereafter, National Loan was substituted for Midstates as the plaintiff in this action.

---

[1] After commencement of the action, Midstates assigned its interest in the subject note to National Loan Investors, L.P. On October 10, 2000, the court granted the motion filed by National Loan Investors, L.P., to be substituted as party plaintiff.

At the hearing in damages, National Loan proffered exhibit four[2] as evidence of the amount of debt. The exhibit was introduced through Diana Tubbs, an account officer with National Loan. Tubbs testified that she previously was employed by the FDIC and was familiar with the standard banking practices relating to failed banks. Although she had no personal knowledge of who had prepared the document or the underlying figures, she did testify that similar documents are produced in the ordinary course of business when a bank has failed. On the basis of her interpretation of exhibit four, Tubbs testified that the principal balance outstanding was $62,800. In addition, National Loan proffered exhibits five[3] and six[4] to establish the debt due. The court rendered judgment in favor of National Loan in the amount of $1. This appeal followed.

National Loan claims on appeal that the court improperly ruled that it had failed to establish by a preponderance of the evidence the probity and credibility of exhibit four. In the alternative, National Loan claims that it produced additional evidence to establish by a preponderance of the evidence the amount owed on the debt. We are not persuaded. We will address these claims together.

In reviewing National Loan's claims on appeal, we employ our well settled standard of review. "On appeal, we will give the evidence the most favorable reasonable construction in support of the verdict to which it is entitled. . . . A factual finding may be rejected by this

---

[2] National Loan's exhibit four is a computer generated spreadsheet entitled "Trial Balance/Posting Journal" and dated December 6, 1991. In addition, Saybrook Bank and Trust Company is in the caption.

[3] National Loan's exhibit five is a computer generated spreadsheet by which the defendant calculated the interest due on the principal balance supplied by exhibit four.

[4] National Loan's exhibit six is a computer generated spreadsheet entitled "Accrual Loan Payment Journal" and dated November 27, 1991. The name "Saybrook Bank & Trust Co." is also in the caption.

court only if it is clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Weyel* v. *Catania*, 52 Conn. App. 292, 295, 728 A.2d 512, cert. denied, 248 Conn. 922, 733 A.2d 846 (1999).

"[G]reat weight is given to the judgment of the trial court because of its opportunity to observe the parties and the evidence." (Internal quotation marks omitted.) *In re Daniel C.*, 63 Conn. App. 339, 348, 776 A.2d 487 (2001). "We repeatedly have held that credibility is a matter for the trier of fact to determine. In a [proceeding] tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . Where there is conflicting evidence . . . we do not retry the facts or pass on the credibility of the witnesses. . . . The probative force of conflicting evidence is for the trier to determine." (Internal quotation marks omitted.) *State* v. *Nelson*, 67 Conn. App. 168, 179, 786 A.2d 1171 (2001).

As a preliminary matter, the parties do not dispute that the spreadsheet in question was properly admitted into evidence pursuant to the business records exception to the rule against hearsay. See General Statutes § 52-180.[5] National Loan argues, however, that the "lib-

---

[5] General Statutes § 52-180 provides in relevant part: "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such

eral standards with regard to admissibility apply equally to the weight to be given these documents once admitted into evidence." We do not agree.

National Loan's argument focuses on the reliability of the business record. It contends that because the record was admissible, it was inherently trustworthy, and, therefore, the court could not discredit the evidence. Admissibility, however, is not the issue before us. Although business records do contain independent "indicia of reliability"; see, e.g., *State* v. *Waterman*, 7 Conn. App. 326, 341–42, 509 A.2d 518 (conformity with statutory conditions that permit admission of business records is deemed to provide reasonable indicia of reliability), cert. denied, 200 Conn. 807, 512 A.2d 231 (1986); it is for the trier of fact to determine the weight to be given to the business record. To require the court to extend the standards for admissibility to apply to the weight to be given the evidence would be to invade the sole province of the fact finder. This, we will not do.

"Conformity with the statutory conditions which permit the admission of business records is deemed to provide reasonable indicia of reliability. . . . Even when properly admitted, [however,] such records carry no presumption of accuracy, their credibility remaining a question for the trier of fact. . . . While the circumstances of the making of the [records] may be shown to affect the weight of that evidence . . . there is no requirement that the accuracy of a business record be proved as a prerequisite to its admission." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Carabetta*, 55 Conn. App. 369, 375, 739 A.2d 301, cert. denied, 251 Conn. 927, 742 A.2d 362 (1999).

---

persons are unavailable as witnesses. *Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility. . . .*" (Emphasis added.)

"It has long been recognized that a record kept in the usual course of business is admissible. . . . It is equally clear that business records do not carry any presumption of accuracy merely because they are admissible. The credibility of such records remains a question for the trier of fact." (Citations omitted.) *State* v. *Ward*, 172 Conn. 163, 170, 374 A.2d 168 (1976); see also *New England Savings Bank* v. *Bedford Realty Corp.*, 246 Conn. 594, 602, 717 A.2d 713 (1998) (proponent need not prove accuracy of record to be admissible; its weight is issue for trier of fact); *State* v. *Waterman*, supra, 7 Conn. App. 341–42 (properly admitted records carry no presumption of accuracy, their credibility remaining question for trier of fact).

In the present case, the defendant objected to the admission into evidence of exhibit four, arguing that it was not within the business records exception to the rule against hearsay because Tubbs lacked any personal knowledge relating to the record.[6] In response, National Loan argued that the concerns held by the defendant addressed the weight of the evidence and not its admissibility.[7] The court was persuaded by that argument and admitted the spreadsheet into evidence.

---

[6] At trial, it was the defendant's position that the exhibit was not admissible. In his brief and at oral argument before this court, the defendant conceded that the document was properly admitted as a business record.

[7] The following exchange took place:

"[National Loan's Counsel]: Because there has been a series of cases, Your Honor, that have said, familiarity with other files from that particular bank, familiarity with their procedures of that other bank, even though they did not work at that bank or [did] not [work] for the FDIC, make that document admissible as a business record.

"The issue as to whether or not they believe it's accurate or not goes to the weight, but the admissibility of that document as a business record has been found by the Supreme Court to allow documents prepared by other entities . . . .

\* \* \*

"The Court: And how does the court determine the accuracy of the debt?

"[National Loan's Counsel]: *It goes to the weight, Your Honor.*" (Emphasis added.)

In its memorandum of decision, the court found that Tubbs "did not prepare exhibit [four], was not employed by the bank that prepared the document, did not know who prepared the document, did not know the Saybrook Bank and Trust Company officers or procedures, did not work for the FDIC when it took over the Saybrook Bank and Trust Company, did not know from her own knowledge the accuracy of the figures contained in exhibit four, and, could not testify whether or not Saybrook Bank and Trust Company followed general banking procedures on a day-to-day basis." In addition, the court concluded that "the credibility and accuracy of the balance due under the note was not established by the [substitute] plaintiff by a preponderance of the evidence."

We conclude that the court's finding that National Loan did not establish by a preponderance of the evidence the amount owed on the debt was not clearly erroneous. The court properly admitted into evidence the computer generated spreadsheet. Achieving the threshold of admissibility, however, does not somehow transform a business record into an undisputed fact. It was completely within the province of the trier of fact, here, the trial court, to determine the weight to be afforded the testimony and exhibits. Therefore, the court properly considered Tubbs' lack of personal knowledge of exhibits four and five and, impliedly, her lack of personal knowledge of the underlying figures used in her preparation of exhibit six. See General Statutes § 52-180.

The judgment is affirmed.

In this opinion the other judges concurred.