LPP MORTGAGE, LTD. *v.* JOSEPH A. LYNCH ET AL.
(AC 29874)

Flynn, C. J., and Gruendel and McDonald, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued November 18, 2009—officially released July 27, 2010

*Frank W. Murphy,* with whom, on the brief, was *Donald F. Reid,* for the appellants-appellees (named defendant et al.).

*John F. Carberry*, with whom, on the brief, was *David T. Martin*, for the appellee-appellant (plaintiff).

*Opinion*

GRUENDEL, J. The defendants Joseph A. Lynch and Frances H. Lynch[1] appeal from the judgment of foreclosure by sale rendered by the trial court in favor of the plaintiff, LPP Mortgage, Ltd. On appeal, the defendants claim that the court erred in awarding (1) interest on the principal amount they owed under the promissory note and (2) attorney's fees to the plaintiff under the note. On cross appeal, the plaintiff claims that the court erred in calculating the amount of (1) principal debt due under the note and (2) attorney's fees under the note. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this matter. On December 18, 1992, the defendants' corporation, Birdseye Printing Company,[2] executed and delivered a promissory note[3] in the amount of $650,000 to Business Loan Center, Inc. (lender), with the United States Small Business Administration acting as the lender's agent. The defendants, as individuals, signed the note. As security for

---

[1] Also named as defendants in this mortgage foreclosure action were Business Loan Center, Inc., the Internal Revenue Service and Yale-New Haven Hospital, Inc. Those defendants are not parties to this appeal. We refer in this opinion to Joseph A. Lynch and Frances H. Lynch as the defendants.

[2] The defendants' corporation, Lynch Enterprises, Inc., did business as Birdseye Printing Company. We refer to their corporation as Birdseye Printing Company in this opinion.

[3] The promissory note provides in relevant part: "[T]he undersigned promises to pay . . . Six Hundred Fifty Thousand . . . dollars, with interest on unpaid principal computed from the date of each advance to the undersigned at the initial rate of 8.75 percent per annum . . . . Holder is authorized to declare all or any part of the indebtedness immediately due and payable upon the happening of . . . (1) Failure to pay any part of the indebtedness when due . . . ."

The note also provides in relevant part: "The term 'Indebtedness' as used herein shall mean the indebtedness . . . including principal, interest, and expenses . . . ."

the note, the defendants executed and delivered (1) a UCC-1 financing statement dated December 18, 1992, granting a security interest to the lender in Birdseye Printing Company's business equipment, (2) a first mortgage on real property located at 65 Stillman Avenue in Bridgeport (commercial property) and (3) a second mortgage on real property located at 2 Betmarlea Road, in Norwalk (home).

In 1998, the defendants defaulted on the promissory note, and they declared business and personal bankruptcies. Thereafter, the lender obtained a judgment of strict foreclosure on the commercial property, as well as a judgment of replevin of Birdseye Printing Company's business equipment, which culminated in the sale of that equipment through auction.[4] The money obtained from those sales was applied toward the defendants' debt under the promissory note.

On August 31, 2000, the plaintiff acquired the promissory note and mortgage from the lender by way of assignment and, on May 19, 2005, instituted a foreclosure action against the defendants' home in Norwalk to collect the balance owed under the note. Pursuant to General Statutes § 52-434 (a) (4) and Practice Book § 19-2A, the matter was referred to an attorney trial referee, who conducted a trial and submitted a report, dated September 21, 2005, as required by Practice Book § 19-8, in which he found, inter alia, that the promissory note signed by the defendants and payable to the plaintiff as an assignee remained in default. He further recommended that judgment enter in favor of the plaintiff in the principal amount of $224,486 with an interest rate of 8.75 percent from February 24, 1999, until the date of judgment. Thereafter, the plaintiff and the defendants objected to the attorney trial referee's report and

---

[4] The amount of $63,400 was generated by the separate sale of a printing press.

recommendation.[5] The court, *Hon. William B. Lewis,* judge trial referee, issued a memorandum of decision, filed February 22, 2006, in which it overruled those objections, accepted the attorney trial referee's report and recommendation and rendered judgment in favor of the plaintiff.[6] The court further ordered a hearing to determine the value of the subject premises, the type of foreclosure, the amount of attorney's fees and other matters associated with the foreclosure of the mortgage. Subsequently, upon the plaintiff's motion for a judgment of strict foreclosure, the court, *Nadeau, J.,* rendered judgment of foreclosure by sale in favor of the plaintiff, awarding $224,486 in principal, with an interest rate of 8.75 percent and attorney's fees in the amount of $44,640.27. The defendants filed an appeal, and the plaintiff filed a cross appeal from that judgment, both of which were dismissed by this court for lack of a final judgment. On April 15, 2008, the matter was referred back to the court, *Nadeau, J.,* and judgment again was rendered in favor of the plaintiff, awarding $224,486 in principal, an interest rate of 8.75 percent from the date of default until the date of judgment and $51,168.27 in attorney's fees. From that judgment, the defendants now appeal and the plaintiff cross appeals.

I

THE DEFENDANTS' APPEAL

A

The defendants first claim that the court erred in awarding the plaintiff interest on the principal amount

---

[5] The plaintiff objected to the referee's use of the calculation of debt based on the plaintiff's own calculation of the correct amount in the prior proceeding. The defendants objected on the ground that the attorney trial referee recommended that interest be added to the principal amount of the debt from February 24, 1999, to the date of judgment.

[6] The court set the interest rate at 10 percent. That rate later was modified to 8.75 percent.

of debt owed under the terms of the promissory note. We disagree.

The following additional facts are necessary for our discussion. At trial before the attorney trial referee, the plaintiff introduced evidence purporting to show that the defendants owed it various amounts under the note, ranging from $390,863 to $539,323.11. The attorney trial referee concluded that the plaintiff had failed to satisfy its burden in establishing the defendant's debt under the promissory note and recommended judgment of foreclosure to enter in favor of the plaintiff in the amount of $224,486.37. Thereafter, the defendants objected to the attorney trial referee's report and recommendation on the ground that it recommended that interest be added to the principal amount of debt from February 24, 1999, to the date of judgment. The court overruled that objection and accepted the attorney trial referee's report and recommendation. Subsequently, the defendants filed a motion to reargue their objection. The court denied that motion.[7]

On appeal, the defendants contend they were denied a meaningful opportunity to raise the issue of the plaintiff's entitlement to interest. Specifically, they allege that all issues other than the plaintiff's right to foreclosure and the calculation of the correct amount of principal debt were reserved for further proceedings. Additionally, the defendants contend that the plaintiff acted inequitably in allegedly artificially inflating the principal amount that the defendants owed under the promissory note, preventing them from refinancing their mortgage and paying off their debt. Specifically, they argue that the plaintiff made no effort to justify the amount that it alleged was due to it from the defendants. As such, they aver that interest should not have

---

[7] The motion was granted to reconsider only the rate of interest. See footnote 6 of this opinion.

been awarded for the period between August 1, 2000, when they assert that they would have refinanced their mortgage, and the date of judgment.

We begin by setting forth our standard of review. "A reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. . . . This court has articulated that attorney trial referees and [fact finders] share the same function . . . whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court. . . .

"The factual findings of a[n] [attorney trial referee] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . .

"Although it is true that when the trial court reviews the attorney trial referee's report the trial court may not retry the case and pass on the credibility of the witnesses, the trial court must review the referee's entire report to determine whether the recommendations contained in it are supported by findings of fact in the report. It is also true that the trial court cannot accept an attorney trial referee's report containing legal conclusions for which there are no subordinate facts." (Citations omitted; internal quotation marks omitted.) *Post Road Iron Works, Inc.* v. *Lexington Development*

*Group, Inc.,* 54 Conn. App. 534, 540–41, 736 A.2d 923 (1999).

We first consider whether the defendants were denied a meaningful opportunity to establish factually the basis on which interest should not have been equitably awarded. Our review of the record convinces us that the defendants reasonably could have expected prejudgment interest to be a matter decided by the attorney trial referee for the following reasons. First, the promissory note provides in relevant part that "the undersigned promises to pay . . . Six Hundred Fifty Thousand . . . dollars, with interest on unpaid principal computed from the date of each advance to the undersigned at the initial rate of 8.75 percent per annum . . . . Holder is authorized to declare all or any part of the *indebtedness* immediately due and payable upon the happening of . . . (1) Failure to pay any part of the indebtedness when due . . . ." (Emphasis added.) The note also provides in relevant part: *"The term 'Indebtedness' as used herein shall mean the indebtedness . . . including principal, interest, and expenses . . . ."* (Emphasis added.) Notably, at the May 19, 2005 hearing before the attorney trial referee, counsel for the plaintiff stated that "there's an issue as to what the true amount of the *debt* is." (Emphasis added.) Similarly, in addressing counsel for the defendants, the attorney trial referee inquired: "[Y]ou're in agreement that this [exhibit] accurately states . . . the plaintiff's claim as to what the *indebtedness* is?"[8] (Emphasis added.) Second, the defendants' assertion that the parties stipulated that all issues other than the plaintiff's right to foreclosure and the calculation of the principal amount of debt were reserved for future proceedings is not supported by the record.[9] Finally, to the extent

[8] The court was referring to exhibit four, which counsel for the plaintiff indicated was "the loan payment history prepared by [the plaintiff], reflecting the amount of the debt, including the principal and accrued interest."

[9] The plaintiff stipulated that determination of attorney's fees only may be premature.

that the defendants allege that attorney trial referees are precluded from recommending prejudgment interest, they are mistaken. To the contrary, attorney trial referees have broad discretion to recommend an award of prejudgment interest. See *Alliance Partners, Inc.* v. *Voltrac Technologies, Inc.*, 263 Conn. 204, 207 n.6, 820 A.2d 224 (2003); *Paulus* v. *LaSala*, 56 Conn. App. 139, 141, 742 A.2d 379 (1999), cert. denied, 252 Conn. 928, 746 A.2d 789 (2000).

More significantly, the defendants had a meaningful opportunity before the attorney trial referee to establish the basis on which interest should not have been awarded. The attorney trial referee stated: "And the trial before me, today, would be a trial on the special defense of unclean hands or breach of the [covenant of] good faith and fair dealing. . . . The other issue, too, is whether the defendant[s] [prevail] on the defenses or not, there's an issue as to what the true amount of the debt is." Thus, the defendants had the opportunity to introduce evidence and present their case concerning the plaintiff's entitlement to interest. The same is true of the hearings before the court with regard to the parties' respective objections to the attorney trial referee's report and recommendation, as well as their motion to reargue that objection.[10]

We finally consider whether the attorney trial referee properly recommended that interest be awarded from the date of default until the date of judgment. "The

---

[10] At the hearing concerning the parties' objections to the attorney trial referee's report and recommendation, the court did not take any evidence. The defendants' "Objection to Acceptance of Report of Attorney Trial Referee," however, states: "By July 11, 2000, the Lynch defendants had secured financing from Old Kent Mortgage Company which would have allowed the Lynches to pay off the mortgage principal of $224,486.37 plus the interest thereon. However, [the plaintiff] insisted that its mortgage debt was $390,863.08 as of July 19, 1999, which grew to $414,210.40 as of June 1, 2005 due to capitalization of certain unexplained expenses added by the [United States] Small Business Administration."

allowance of prejudgment interest under [General Statutes] § 37-3a is a matter within the discretion of the trial court. . . . This allowance turns on whether the detention of the money is or is not wrongful under the circumstances. . . . If the trial court determines that one party has wrongfully detained funds, it must next determine the date the wrongful detention began. Where the claim rests on a breach of contract, statutory interest accrues from the date the contract was breached." (Citations omitted; internal quotation marks omitted.) *Patron* v. *Konover*, 35 Conn. App. 504, 517, 646 A.2d 901, cert. denied, 231 Conn. 929, 648 A.2d 879 (1994); see also *Rissolo* v. *Betts Island Oyster Farms, LLC*, 117 Conn. App. 344, 358, 979 A.2d 534 (2009) (award of prejudgment interest discretionary, not mandatory).

The referee's recommendation that interest be awarded from the date of default until the date of judgment finds sufficient support in the record. It was not disputed that the mortgage note and deed properly were executed. Nor was it disputed that the defendants defaulted on the promissory note. As stated earlier, the promissory note provides that upon default, the holder of the note may declare the indebtedness due, which includes principal and interest. In light of the foregoing, as well as the court's discretion to award prejudgment interest, the attorney trial referee's report and recommendation that interest be awarded from the date of default until the date of judgment, we conclude, was not clearly erroneous.

B

The defendants also claim that the court erred in awarding the plaintiff attorney's fees. Specifically, they contend that the court erred in awarding attorney's fees because the plaintiff did not prevail by virtue of their having recovered only $224,486.37, an amount the

defendants conceded was due, of the $390,836.88 the plaintiff sought under the promissory note. Alternatively, they contend the court erred in applying a formula to calculate attorney's fees. We disagree.

We first consider the defendants' claim that the court erred in awarding the plaintiff attorney's fees because the plaintiff did not prevail. General Statutes § 52-249 (a) provides: "The plaintiff in any action of foreclosure of a mortgage or lien, upon *obtaining judgment of foreclosure,* when there has been a hearing as to the form of judgment or the limitation of time for redemption, shall be allowed the same costs, including a reasonable attorney's fee, as if there had been a hearing on an issue of fact. The same costs and fees shall be recoverable as part of the judgment in any action upon a bond which has been substituted for a mechanic's lien." (Emphasis added.) Contrary to the defendants' assertion, the plain language of § 52-249 (a) makes clear that the plaintiff need not prevail to recover attorney's fees. Rather, the court need only render a judgment of foreclosure in favor of the plaintiff, as it did in the present case. Because the court entered a judgment of foreclosure in favor of the plaintiff, we conclude that its award of attorney's fees was proper.

Alternatively, the defendants contend the court erred in applying a formula to calculate attorney's fees. The following facts are relevant to our discussion. When the court, *Nadeau, J.,* pondered how best to calculate the amount of attorney's fees at the April 15, 2008 hearing concerning the plaintiff's motion for strict foreclosure, the following colloquy transpired:

"[The Defendants' Counsel]: I think the—the easiest resolution—we're both going to leave unhappy. *But if you took one of the formulas and applied it to the entire claim of $77,000, it would—it would be an acceptable result—*

"The Court: And you can—

"[The Defendants' Counsel]:—rather than going—

"The Court: You can plug that disastrously ridiculous solution into the remaining place I worried about the bankruptcy problem.

"[The Defendants' Counsel]: Yes, it would take all of the issues that have been raised.

"The Court: All right. Well, let me do that formula, okay. It's the best I can come up with. I've done it before . . . ." (Emphasis added.)

Ultimately, the court applied a formula in which it established a ratio by comparing the amount of the principal award ($224,486.37) to the amount of principal the plaintiff argued it was entitled ($390,836.88). As such, the court awarded $44,640.27 of the $77,729.88 sought by the plaintiff on the basis of the proportion of the principal recovered. Although the trial court did not award attorney's fees incurred in connection with the first appeal dismissed by this court for lack of a final judgment, it did allow the plaintiff to recover an additional $6528 in fees and expenses not related to the first appeal, raising the total amount of attorney's fees to $51,168.27.

Initially, we consider whether the defendants have preserved their claim properly. "Waiver is the intentional relinquishment or abandonment of a known right or privilege. . . . As a general rule, both statutory and constitutional rights and privileges may be waived. . . . Waiver is based upon a species of the principle of estoppel and where applicable it will be enforced as the estoppel would be enforced. . . . Estoppel has its roots in equity and stems from the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed . . . . Waiver does not have to be express, but may consist of acts or conduct

from which waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so." (Internal quotation marks omitted.) *Wiele* v. *Board of Assessment Appeals*, 119 Conn. App. 544, 549, 988 A.2d 889 (2010). Because the defendants expressly approved the court's application of the formula to calculate the amount of attorney's fees, they have waived any right to challenge this matter on appeal.

Alternatively, we note that "[t]his court routinely has held that it will not afford review of claims of error when they have been induced. [T]he term induced error, or invited error, has been defined as [a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling. . . . It is well established that a party who induces an error cannot be heard to later complain about that error. . . . This principle bars appellate review of induced nonconstitutional and induced constitutional error. . . . The invited error doctrine rests [on principles] of fairness, both to the trial court and to the opposing party." (Internal quotation marks omitted.) *Snowdon* v. *Grillo*, 114 Conn. App. 131, 139, 968 A.2d 984 (2009). Because the defendants invited the court to apply the formula to calculate attorney's fees, we decline to review their claim that the court erred in applying that formula. See *E. Udolf, Inc.* v. *Aetna Casualty & Surety Co.*, 214 Conn. 741, 752, 573 A.2d 1211 (1990) (party may not secure reversal on basis of any invited error); *Pineau* v. *Home Depot, Inc.*, 45 Conn. App. 248, 252, 695 A.2d 14 (1997) (same), appeal dismissed, 245 Conn. 422, 713 A.2d 825 (1998).

II

THE PLAINTIFF'S CROSS APPEAL

A

The plaintiff claims that the attorney trial referee erred in determining the amount of principal debt the

defendants owed under the promissory note. We disagree.

The following facts are relevant to our discussion. At the first foreclosure action between the defendants and the lender, the defendants introduced a motion for deficiency judgment, dated February 24, 1999. At the defendants' request, the attorney trial referee took judicial notice of the motion and admitted it into evidence. It provides in relevant part: "At the time of entry of said judgment, the subject property was appraised at a value of $180,000 (subject to taxes in the amount of $49,116.00) and the plaintiff's debt was found to be $539,323.11. There is an additional offset for the sale of equipment in the amount of $183,952.74 leaving a balance of $224,486.37." The plaintiff introduced two exhibits into evidence to support its argument that the defendants owed $390,863.88 under the promissory note: (1) a spreadsheet entitled "Loan Payment History" admitted as a business record, and indicating that the defendants owed $390,863.88 as of July 6, 1999, and (2) an affidavit of debt from the first foreclosure action, dated July 1, 1999, indicating that the defendants owed $390,863.88. In his report and recommendation, the attorney trial referee concluded that judgment of foreclosure should enter in favor of the plaintiff in the amount of $224,486.37.

On cross appeal, the plaintiff claims that the attorney trial referee erred in determining the amount of principal debt the defendants owed under the promissory note. Specifically, the plaintiff contends that the court did not afford enough weight to its evidence supporting its claim that the defendants owed $390,863.88.[11] As

---

[11] The plaintiff also contends that because the spreadsheet entitled "Loan Payment History" was admitted as a business record, it "should be the barometer for reliability . . . ." We note, however, that "[i]t has long been recognized that a record kept in the usual course of business is admissible. . . . It is equally clear that business records do not carry any presumption of accuracy merely because they are admissible. The credibility of such records remains a question for the trier of fact." (Internal quotation marks

such, the plaintiff asserts that the court erred in accepting the attorney trial referee's report and recommendation.

"Our standard of review concerning a trial court's findings of fact is well established. If the factual basis of the court's decision is challenged, our review includes determining whether the facts set out in the memorandum of decision are supported by the record or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . Further, a court's inference of fact is not reversible unless the inference was arrived at unreasonably. . . . We note as well that [t]riers of fact must often rely on circumstantial evidence and draw inferences from it. . . . Proof of a material fact by inference need not be so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact. . . . Moreover, it is the exclusive province of the trier of fact to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony. . . . Thus, if the court's dispositive finding . . . was not clearly erroneous, then the judgment must be affirmed. . . . The function of the appellate court is to review, and not retry, the proceedings of the trial court. (Citation omitted; internal quotation marks omitted.) *Stein* v. *Tong*, 117 Conn. App. 19, 24, 979 A.2d 494 (2009).

The record in the present case makes clear that the attorney trial referee had sufficient evidence to conclude that the defendants owed $224,486.37 under the promissory note. The plaintiff essentially requests that we transgress our function as an appellate court and

omitted.) *Midstate Resources Corp.* v. *Dobrindt*, 70 Conn. App. 420, 425, 798 A.2d 494 (2002).

weigh conflicting evidence. See *IN Energy Solutions, Inc.* v. *Realgy, LLC*, 114 Conn. App. 262, 275, 969 A.2d 807 (2009) (Appellate Court cannot sift and weigh evidence). This, we cannot do.

## B

The plaintiff also claims that the court erred in calculating attorney's fees. We disagree.

The following facts aid our discussion. The promissory note provides in relevant part: "The undersigned shall pay all expenses of any nature, whether incurred in or out of court, and whether incurred before or after this Note shall become due at its maturity date or otherwise, including but not limited to reasonable attorney's fees and costs, which Holder may deem necessary or proper in connection with the satisfaction of the Indebtedness or the administration, supervision, preservation, protection of (including, but not limited to, the maintenance of adequate insurance) or the realization upon the Collateral." At the hearing on the plaintiff's motion for a judgment of strict foreclosure, the plaintiff claimed that it was entitled to $77,729.88 in attorney's fees. The plaintiff also provided an itemized list of fees and expenses in connection with this matter. In calculating attorney's fees, the court applied a formula to which the plaintiff repeatedly objected.

On appeal, the plaintiff claims that the court erred in calculating attorney's fees. Specifically, the plaintiff contends that the court should not have arbitrarily disallowed fees it incurred in the first appeal when those fees, pursuant to the language of the promissory note, were "in connection with the satisfaction of the [i]ndebtedness . . . ." Additionally, the plaintiff contends that the court rewrote the terms of the contract by applying the formula to calculate attorney's fees. We are not persuaded.

We begin by setting forth our standard of review. "It is well established that we review the trial court's decision to award attorney's fees for abuse of discretion. . . . This standard applies to the amount of fees awarded . . . and also to the trial court's determination of the factual predicate justifying the award. . . . Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Total Recycling Services of Connecticut, Inc.* v. *Connecticut Oil Recycling Services, LLC*, 114 Conn. App. 671, 680, 970 A.2d 807 (2009).

"Connecticut adheres to the American rule, which provides that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. . . . When a contract expressly provides for the recovery of reasonable attorney's fees, an award under such a clause requires an evidentiary showing of reasonableness. . . . A trial court may rely on its own general knowledge of the trial itself to supply evidence in support of an award of attorney's fees. . . . The amount of attorney's fees to be awarded rests in the sound discretion of the trial court and will not be disturbed on appeal unless the trial court has abused its discretion. . . . Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . ." (Citations omitted; internal quotation marks omitted.) *Young* v. *Vlahos*, 103 Conn. App. 470, 479, 929 A.2d 362 (2007), cert. denied, 285 Conn. 913, 943 A.2d 474 (2008); see *Buccino* v. *Cable Technology, Inc.*, 25 Conn. App. 676, 679, 595

A.2d 376 (1991) (amount of attorney's fees awarded rests in sound discretion of trial court because it is always in more advantageous position to evaluate services of counsel than reviewing court).

We first consider the plaintiff's claim that the trial court should not have arbitrarily disallowed fees that the plaintiff incurred in the first appeal when those fees, pursuant to the language of the promissory note, were "in connection with the satisfaction of the Indebtedness . . . ." In refusing to award attorney's fees in connection with the first appeal that had been dismissed by this court for lack of a final judgment, the following colloquy transpired:

"The Court: And the reason you said they shouldn't recover with regard to their cross appeal is what?

"[The Defendants' Counsel]: It was dismissed. Their cross appeal was dismissed, as was my appeal.

"The Court: So, it wasn't that their cross appeal was deemed on the merits to have been dismissed; it's that it was the baby with the bathwater that was dumped out entirely by the Appellate Court. . . . It seems crazy in a sense to be receiving it now, but it does prompt the question—because the answer doesn't seem all that simple about when would you get it, if you don't get it now.

"Should not this particular fee for the prosecution of your cross appeal await the day when you get it?

"In other words, it seems to me, for example, if the Appellate Court said, 'Here, [plaintiff's counsel], you are entitled to that [$390,000] that [Judge] Nadeau didn't give you,' it seems to me, at that point, as it was remanded to the trial court to make a final pronouncement about that [$390,000] that, that would be the time to collect for the pursuit of the [$390,000] on appeal. . . . But wouldn't that be a possible place to do it?

. . . All right. What I'm going to do now, then, is to not award those." In light of the foregoing, we conclude that the court exercised sound discretion in refusing to award the plaintiff attorney's fees related to the first appeal.

We next consider the plaintiff's claim that the court rewrote the terms of the contract by applying the formula to calculate attorney's fees. In the present case, the court indicated why it was applying a formula to calculate attorney's fees. It stated: "It strikes me, it's very difficult to award the entire fee when it's clear that the entire goal wasn't achieved." The court also stated: "Well, let me do that formula, okay. It's the best I can come up with. I've done it before, but I do think it's fairer to [the plaintiff's counsel] in a sense that we acknowledge their premium, so to speak, at having been hauled in for the difficult matter and had people of not—of not garden variety talent, but of supreme talent brought to bear on a more difficult matter. I'd rather acknowledge that and chop out based on success than to chop them back down toward the level of the fees . . . ." In adopting the formula to calculate attorney's fees, the court implicitly deemed certain fees uncollected to be unreasonable. It is incumbent on the appellant to provide an adequate record for review on appeal. *Celini* v. *Celini*, 115 Conn. App. 371, 379, 973 A.2d 664 (2009). Here, the plaintiff did not request an articulation as to what fees the court deemed reasonable and what fees it deemed unreasonable. "In the absence of a motion for articulation, we read an ambiguous trial record to support, rather than to undermine, the judgment." (Internal quotation marks omitted.) *Perez* v. *D & L Tractor Trailer School*, 117 Conn. App. 680, 707, 981 A.2d 497 (2009), cert. denied, 294 Conn. 923, 985 A.2d 1062 (2010) We, therefore, conclude that the court correctly applied the law and did not abuse its discretion in awarding attorney's fees to the plaintiff.

The judgment is affirmed and the case is remanded for the purpose of setting a new sale date.

In this opinion the other judges concurred.