SONEPAR DISTRIBUTION NEW ENGLAND, INC. *v.*
T AND T ELECTRICAL CONTRACTOR'S,
INC., ET AL.
(AC 32662)

Lavine, Bishop and Schaller, Js.

Argued November 10, 2011—officially released February 28, 2012

*Charles I. Miller*, for the appellant (plaintiff).

*Jeffrey O. McDonald* and *Raymond M. Hassett*, for the appellees (defendants).

*Opinion*

LAVINE, J. This appeal arises from a breach of contract action for failure to pay for materials allegedly delivered by the plaintiff, Sonepar Distribution New England, Inc., doing business as Northeast Electrical Distributors, to the defendants, T & T Electrical Contractor's, Inc., and Gerard T. Beaudoin III.[1] The plaintiff appeals from the judgment rendered by the trial court

---

[1] The plaintiff alleged that it had entered into a credit agreement with T & T Electrical Contractor's, Inc., whom we refer to in this opinion as the defendant. Beaudoin was alleged to have guaranteed the credit agreement on behalf of the defendant. The appeal does not concern the personal guarantee.

granting the defendant's oral motion to dismiss made at the conclusion of the plaintiff's case-in-chief. On appeal, the plaintiff claims that the court improperly (1) applied the preponderance of the evidence standard when ruling on the defendant's motion to dismiss made pursuant to Practice Book § 15-8,[2] (2) concluded that it had failed to present sufficient evidence that the subject goods were delivered, (3) denied its motion to open the judgment and (4) found that it had failed to comply with the court's order to submit new evidence that reasonably was likely to change the outcome of the case. We agree that the court improperly applied the preponderance of the evidence standard when ruling on the motion to dismiss, but conclude that the error was harmless and thus affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiff's claims. The plaintiff commenced this action in May, 2009, seeking payment for certain goods that the plaintiff alleged it had delivered to the defendant's storage facility at 330 Ledyard Street in Hartford. The plaintiff claimed that, although it had delivered the goods to the defendant's satisfaction, the defendant refused to pay pursuant to a certain credit agreement between the parties. The plaintiff claimed that the defendant owed $59,114.67 plus interest.[3] The case was tried to the court in April and May, 2010. At the conclusion of the plaintiff's case-in-chief, the defendant moved for a judgment of dismissal. On May 4, 2010, the court granted the motion to dismiss, but also granted the plaintiff thirty days to

[2] Practice Book § 15-8 provides in relevant part: "If, on the trial of any issue of fact in a civil matter tried to the court, the plaintiff has produced evidence and rested, a defendant may move for judgment of dismissal, and the judicial authority may grant such motion if the plaintiff has failed to make out a prima facie case. . . ."

[3] Years prior to the events underlying this action, the parties entered into a credit agreement. Had the plaintiff prevailed at trial, the agreement would have provided a basis for an award of interest damages.

discover and present new evidence, if any, to prove its claim. On June 4, 2010, the plaintiff filed a motion to open the judgment and present newly discovered evidence. On August 3, 2010, the court denied the motion to open following the plaintiff's offer of proof. After the court denied the plaintiff's motion to reargue, the plaintiff appealed.

I

The plaintiff's first claim is that it was improper for the court to apply the preponderance of the evidence standard when ruling on the defendant's motion to dismiss for failure to make out a prima facie case pursuant to Practice Book § 15-8. We agree that the preponderance of the evidence standard is inapplicable to a motion to dismiss for failure to make out a prima facie case, but conclude that the court's error in applying the preponderance standard was harmless, as ultimately the court was the trier of fact. See *Berchtold* v. *Maggi*, 191 Conn. 266, 272, 464 A.2d 1 (1983); *Friends of Animals, Inc.* v. *United Illuminating Co.*, 124 Conn. App. 823, 842 n.12, 6 A.3d 1180 (2010).

"If, on the trial of any issue of fact in a civil action tried to the court, the plaintiff has produced evidence and rested his or her cause, the defendant may move for judgment of dismissal, and the judicial authority may grant such motion, if in its opinion the plaintiff has failed to make out a prima facie case. . . . A prima facie case . . . is one sufficient to raise an issue to go to the trier of fact. . . . In order to establish a prima facie case, the proponent must submit evidence which, if credited, is sufficient to establish the fact or facts which it is adduced to prove. . . . In evaluating [the trial court's decision on] a motion to dismiss, [t]he evidence offered by the plaintiff is to be taken as true and interpreted in the light most favorable to [the plaintiff], and every reasonable inference is to be drawn in [the

plaintiff's] favor. . . . Whether the plaintiff has established a prima facie case entitling the plaintiff to submit a claim to a trier of fact is a question of law over which our review is plenary." (Citations omitted; internal quotation marks omitted.) *Sullivan* v. *Thorndike*, 104 Conn. App. 297, 302, 934 A.2d 827 (2007), cert. denied, 285 Conn. 907, 908, 942 A.2d 415, 416 (2008).

In order to prevail on a breach of contract action, a plaintiff must prove "the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." (Internal quotation marks omitted.) *Chiulli* v. *Zola*, 97 Conn. App. 699, 706–707, 905 A.2d 1236 (2006).

The following facts, as gleaned from our review of the transcript and on which the parties generally agree, provide the context for the plaintiff's claim. On or about June 6, 2006, the defendant placed an order for 100 Quazite boxes,[4] lids and bolts (collectively boxes) with the plaintiff. According to Tim Sullivan, manager of the plaintiff's Hartford branch office, the plaintiff placed an order with the manufacturer requesting that the boxes be delivered directly to the defendant's storage facility (drop shipped order). The manufacturer, Strongwell, indicated that it could not "drop ship" the order, but would deliver the order to the plaintiff's central distribution center in Canton, Massachusetts. The plaintiff was then responsible for delivering the boxes to its Hartford branch office and then to the defendant. Despite this indication, the manufacturer drop shipped 100 boxes to the defendant's storage facility in Hartford. The defendant took delivery of the drop shipped order

---

[4] Quazite boxes are composite electric junction boxes used in streetscape projects. They are buried at grade level and allow access to the electrical connections for light poles. The dimension of a box is 30 inches by 30 inches by 17 inches. One box weighs approximately 180 pounds and each lid weighs approximately 80 pounds.

from the manufacturer[5] and paid the plaintiff. Apparently, the manufacturer also delivered 100 boxes to the plaintiff's Hartford branch office. The plaintiff claims that it delivered 100 boxes, in two truckloads, to the defendant's storage facility (stock order shipment) on August 10, 2006.[6] The defendant denies having received the stock order shipment and refuses to pay the plaintiff's invoices for the same. This action, the court reasoned, turns on whether the stock order shipment was delivered to the defendant.[7]

At trial, the plaintiff produced a receipt signed by one of the defendant's agents for the drop shipped order and an internal document noting delivery prepared by one of its employees for the stock order shipment. Although the plaintiff claims that it delivered 100 boxes to the defendant's storage facility via two deliveries on August 10, 2006, it failed to obtain a receipt signed by one of the defendant's agents confirming delivery of the stock order shipment.

---

[5] The drop shipped order was comprised of two deliveries that were received by the defendant and signed for by Gary Taylor, the defendant's service manager, on August 17 and 23, 2006.

[6] The stock order shipment allegedly was delivered to the defendant's storage facility in two deliveries from the plaintiff's Hartford branch office on August 10, 2006. The driver of the delivery truck, Alex Estronza, wrote his initials on the packing slips and the date "8/10." No employee of the defendant was present at the time of the alleged deliveries. Estronza did not testify at trial. Jeremy Avery testified that he accompanied Estronza on the second delivery.

[7] In ruling on the defendant's motion to dismiss, the court stated in part regarding the conflicting testimony: "[O]ne of the things that really questions whether there was ever a request by the defendants for a second shipment is this. It is generally conceded, and the Court finds, that there was a shipment of 100 Quazite boxes, and possibly some other materials, which came directly from the manufacturer, although through the plaintiff, and that was paid for by the defendants.

"Now, I asked this question during the trial. If the plaintiff's shipment had been delivered on August 10, as alleged, of 2006, then when the drop ship came in on August 14 of 2006, the defendant would have rejected it, since he already had one. And that doesn't make any sense. He didn't reject the second one."

At the conclusion of the plaintiff's case-in-chief, counsel for the defendant made an oral motion to dismiss the action for the plaintiff's failure to make out a prima facie case. See Practice Book § 15-8. Following argument by counsel for the parties on the motion to dismiss, the court rendered an oral decision granting the motion. In its decision, the court stated in relevant part, "the burden to prove the case here is on the plaintiff, by a preponderance of the evidence." The court also stated in relevant part: "[L]et me start off also by talking about credibility. I have no doubt of the credibility of the defendant's witnesses. I think that Mr. Sullivan I found to be very credible, very honest, to the extent of what he knew. And I have no question with his credibility. I do have somewhat of a credibility problem with [Jeremy] Avery. He was the one who accompanied the truck driver to deliver the [stock order shipment] that is in question, the shipment. And because we don't know what happened to that shipment, the question comes in, did it really exist and was it really delivered, as Mr. Avery said. I don't know the answer to that, but because of the mystery about that shipment that we're talking about, I find it hard to believe that he was helping to unload the shipment, and was with the truck driver."

In this case, the court applied the preponderance of the evidence standard when ruling on the defendant's motion to dismiss rather than accepting the plaintiff's evidence as true and viewing it in the light most favorable to the plaintiff. See *Winn* v. *Posades*, 281 Conn. 50, 54–55, 913 A.2d 407 (2007). The court also predicated its decision, in part, on the credibility of witnesses, which was not proper given the stage of the proceedings. The court, however, was the trier of fact, and ultimately would have had to weigh the evidence, which includes credibility determinations. See *LPP Mortgage, Ltd.* v. *Lynch*, 122 Conn. App. 686, 700, 1 A.3d 157 (2010) (province of trier of fact to make credibility

determinations).[8] "[N]otwithstanding the trial court's characterization of its ruling as a dismissal for failure to establish a prima facie case, the question before us is not whether the evidence was sufficient to present the claim to a finder of fact, but whether, having presented its case to the fact finder at trial, the plaintiff sustained its burden of proof." *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 462, 844 A.2d 836 (2004).

Here, we conclude that the court's errors were harmless. The court found that the plaintiff had failed to prove performance, that is, that it had delivered the boxes to the defendant pursuant to the alleged stock order shipment. The plaintiff therefore could not prevail on its breach of contract claim. Although the court improperly applied a preponderance of the evidence standard to the defendant's motion to dismiss for failure to make out a cause of action, we conclude that the court properly rendered judgment for the defendant given this failure of proof.[9] This court may "sustain a right decision although it may have been placed on a wrong ground." (Internal quotation marks omitted.) *LaBow* v. *LaBow*, 69 Conn. App. 760, 761 n.2, 796 A.2d 592, cert. denied, 261 Conn. 903, 802 A.2d 853 (2002). Consequently, the plaintiff's claim fails.

## II

The plaintiff also claims that the court erred in denying its motion to open the judgment and by ruling that it had failed to comply with the court's order to submit new evidence that was reasonably likely to change the outcome of the case. We disagree with the plaintiff's claims.

---

[8] The plaintiff had rested its case with the proviso that it would be permitted to open the case in thirty days if it discovered new evidence; see part II of this opinion; and the defendant did not intend to call any witnesses.

[9] This conclusion resolves the plaintiff's second claim that it presented sufficient evidence to withstand a motion to dismiss for failure to establish a prima facie case.

The following facts are relevant to our determination. Near the end of its presentation of evidence, the plaintiff requested a continuance to subpoena testimony from the Hartford city engineer and an agent of Micon Electrical, LLC, regarding the number of boxes that were used in certain streetscape projects in Hartford. In response, the court stated: "Well, first of all, I have a trial management report. You don't list any of those witnesses. . . . But I do want to see justice done here, and if there's been some lack of investigation on [the part of the plaintiff's counsel], here's what I'm going to do, depending upon what I hear from [the defendants' counsel and the plaintiff's counsel on the motion to dismiss]. But if I should rule in favor of the defendants, if you want to make a motion to reopen on the basis of new evidence that is material, you're free to do so . . . . I can leave the case open for that purpose—so there'll be a pending case, but strictly open for that purpose, so that you can issue subpoenas and do depositions for people from Micon or the city. . . . You've got to pin it down. You can't just say, well, additional boxes were used. *You've still got to tie that up to the delivery.*" After rendering judgment for the defendant, the court then stated: "Do whatever depositions you want. But you may reopen, and I'm conditioning on showing me what you have to make sure that it is material, relevant and provable. And if it is, does it somehow make a difference in the verdict for the defendant . . . ." (Emphasis added.)

On June 4, 2010, the plaintiff filed a motion to open the judgment and present evidence it claimed was newly discovered. On July 23, 2010, the defendant filed an objection to the motion to open the judgment. The court denied the motion to open following oral argument on August 3, 2010.

In considering the plaintiff's motion to open, the court made the following observation: "I think what [the

plaintiff's counsel] is trying to do here is to show that somehow the defendants had boxes additional to those on Maple and Main Street and even Blue Hills that they were able to use on Trumbull Street, for example. And, therefore, because of their ability to use these additional boxes, they must have gotten them from somewhere. And I'm supposed to infer that they came from [the plaintiff]." The court concluded, however, stating: "I don't see anything in here that anybody can testify . . . which is most important, that the defendants received the second shipment. I don't see it here. We're still back to the point of the shipments coming in allegedly but nobody accepting them and being dumped in a facility on Airport Road and no one knows what happened to it afterwards. That doesn't seem you've overcome at all."

"A motion to open and vacate a judgment . . . is addressed to the [trial] court's discretion, and the action of the trial court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Marion's Appeal from Probate*, 119 Conn. App. 519, 521, 988 A.2d 390 (2010).

On the basis of our review of the plaintiff's motion to open the judgment and the transcript of the arguments made on August 3, 2010, we conclude that, through its representations in the motion and its offer of proof, the plaintiff attempted to prove that the defendant took delivery of the stock order shipment because the number of boxes installed on the various streetscapes exceeded 100. Although the proffered evidence may

demonstrate that the parties, the city and nonparty contractors disagree as to who performed what services in various locations, and who supplied the boxes and when, those facts and issues are not relevant to the court's resolution of the plaintiff's case.[10] See *Wright* v. *Hutt*, 50 Conn. App. 439, 449–50, 718 A.2d 969 (plaintiff's recovery limited to allegations of complaint), cert. denied, 247 Conn. 939, 723 A.2d 320 (1998). That proffered evidence does not demonstrate that the defendant received the stock order shipment.

In this case, the plaintiff pleaded breach of contract against the defendant. At trial, the plaintiff presented evidence of the defendant's purchase order for 100 boxes, which were delivered by the manufacturer, accepted and paid for by the defendant. The plaintiff presented no evidence that the defendant placed a second order for 100 boxes and took delivery of them.[11] Without such evidence, the plaintiff cannot prevail on its breach of contract claim. We conclude, therefore, that the court did not abuse its discretion in denying the plaintiff's motion to open the judgment nor did it err by finding that the plaintiff had failed to comply with its order of May 4, 2010, that is, to present new evidence that would change the outcome of the case.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] Even if the proffered evidence were relevant, it is not determinative as the plaintiff did not demonstrate how many, if any, boxes the defendant had before receiving the drop shipped order or whether it acquired boxes subsequently from a source other than the plaintiff.

[11] In response to a point made in the defendant's brief, the plaintiff argued that it may recover under a theory of unjust enrichment. Although the plaintiff did not allege a count of unjust enrichment, it claims that it is entitled to the same under its prayer for relief. We need not address that claim. The plaintiff failed to prove its breach of contract action and that it delivered 100 boxes pursuant to the alleged stock order shipment. Without proof that the defendant received a benefit for which it did not pay, there can be no unjust enrichment. See *Vertex, Inc.* v. *Waterbury*, 278 Conn. 557, 573, 898 A.2d 178 (2006).